# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46252

KATHERINE LEA STANFIELD, )
)
    Petitioner-Appellant, )
) **Boise, June 2019 Term**
v. )
) **Opinion Filed: December 3, 2019**
STATE OF IDAHO, )
) **Karel A. Lehrman, Clerk**
    Respondent. )
)

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Jason D. Scott, District Judge.

The judgment of the district court is <u>vacated in part</u> and<u> affirmed in part</u>. The case is remanded for further proceedings.

Ferguson Durham, PLLC, Boise, for appellant Katherine Lea Stanfield. Craig H. Durham argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Kenneth K. Jorgensen argued.

———————————

STEGNER, Justice.

Katherine Lea Stanfield appeals from the district court's judgment summarily dismissing her petition for post-conviction relief. Stanfield was a daycare provider with decades of experience caring for young children. On December 11, 2009, she was caring for her two grandsons and W.F., the two-year-old son of her daughter's boyfriend. W.F. collapsed while in Stanfield's care and was rushed to a hospital emergency room. Two days later, he was taken off life support and died. In 2012, a jury found Stanfield guilty of first-degree murder committed through the aggravated battery and death of a child under twelve years old.

Stanfield's direct appeal to this Court was unsuccessful. *State v. Stanfield*, 158 Idaho 327, 347 P.3d 175 (2015). She subsequently filed a petition for post-conviction relief based on allegations of ineffective assistance of trial counsel and violations of her due process rights. During the trial, several witnesses testified that W.F. had suffered serial abuse, the implication being that Stanfield had been the perpetrator of the abuse.

1

Stanfield's daughter had personally observed W.F.'s father commit acts of abuse on W.F. She informed Stanfield's lawyers of her observations. In addition, W.F.'s mother informed a police investigator that she had also witnessed W.F.'s father abuse him and implored the authorities to investigate him. However, Stanfield's attorneys never elicited this evidence at trial. Stanfield maintains her lawyers were ineffective in their failure to present this potentially exculpatory evidence.

The State moved for summary dismissal of her petition, which the district court granted. On appeal, Stanfield argues that the district court erred in not granting her an evidentiary hearing on four of her claims. Because there are genuine issues of material fact presented in Stanfield's petition, we vacate the district court's summary dismissal and remand so that Stanfield may be afforded an evidentiary hearing to determine whether her lawyers at trial were ineffective.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stanfield was convicted of first-degree murder of W.F. by aggravated battery on a child under twelve years old. In December 2009, Stanfield provided daycare primarily for her two grandsons and W.F., the son of her daughter's boyfriend. Stanfield had been caring for W.F. most weekdays during the previous four months.

On December 11, 2009, Stanfield called the Ada County Sheriff's dispatch service to report W.F. had fallen and was unresponsive. W.F. was transported to St. Luke's medical facility where he underwent a number of tests, including two CT scans, which indicated severe head trauma. W.F. never regained consciousness and died two days later when taken off life support. An autopsy revealed axonal injury to the brain. The pathologist who performed the autopsy concluded the injury could have been caused by either hypoxia or trauma. The pathologist suggested further studies by a neuropathologist. The neuropathologist's report concluded that W.F.'s death had been caused by non-accidental trauma.

Police questioned Stanfield and her two grandsons, C.D. (aged 8) and J.D. (aged 5), about the incident immediately after W.F. was transported to the hospital and multiple times following W.F.'s death. Ultimately, in September 2010, Stanfield was charged with first-degree murder by aggravated battery on a child under twelve years old. Stanfield maintained that W.F. was not pushed or shaken but had fallen down while she was in the kitchen. C.D. and J.D. both corroborated Stanfield's version of events. Multiple experts concluded that W.F.'s injuries were inconsistent with this scenario. Stanfield pleaded not guilty and went to trial in May 2012. A jury

returned a verdict of guilty on June 4, 2012. She was sentenced to an indeterminate life sentence with a mandatory minimum sentence of ten years.

Stanfield brought a direct appeal of her conviction. In affirming the district court, this Court wrote: "The primary issue at trial was what—or who—caused the injuries that resulted in W.F.'s death. The State contended that W.F. died from non-accidental head trauma resulting from Stanfield abusing him." *Stanfield*, 158 Idaho at 330, 347 P.3d at 178.

Stanfield filed a post-conviction relief action following her unsuccessful appeal to the United States Supreme Court. *Stanfield v. Idaho*, 136 S. Ct. 794 (2016) (mem). She contends that her trial lawyers were ineffective for: (1) failing to adequately prepare, investigate, or present evidence that W.F.'s father had abused W.F.; (2) failing to present expert testimony regarding Stanfield's lack of emotional response to W.F.'s injuries; (3) unreasonably failing to object to a statement by the prosecutor that shifted the burden of proof to Stanfield; and (4) unreasonably waiving jury instructions on all lesser-included offenses.

In particular, Stanfield maintains that her lawyers were ineffective in failing to combat the State's insinuation that Stanfield was W.F.'s abuser. The district court's decision acknowledged that the State attempted at trial to portray Stanfield as W.F.'s abuser:

> Stanfield claims her counsel rendered ineffective assistance by not meeting the prosecution's evidence and argument that W.F. was an abused child with evidence that the abuser was W.F.'s father, Lance Fesler. Without that evidence, she says the jury might have convicted her of W.F.'s murder because it "had only Mrs. Stanfield to blame for the 'indicators' of child abuse."

> During closing arguments, the prosecutor indeed argued that W.F.'s various injuries "are indicators of a child being abused. [Witnesses] also told you that you can look at the child's behavior, [there are] emotional or behavioral indicators that a child is being abused . . . . [Y]ou will see that they are all present in this case." It doesn't appear that the prosecutor explicitly argued that Stanfield had abused W.F. in the past. But because the State repeatedly mentioned W.F.'s old bruises, as well as the behavioral signs that he had been abused, and didn't present evidence of who the past abuser was, the jury could have inferred that Stanfield was responsible for the past abuse the prosecutor contended had occurred. This opens the possibility that the jury convicted her on propensity grounds.

In addition, Stanfield had admissible evidence to present that W.F. had been abused by someone other than Stanfield: W.F.'s biological father. Both W.F.'s mother and Stanfield's daughter, who was cohabitating with W.F.'s father for the four months prior to W.F.'s death, claimed that they had witnessed W.F.'s father abuse W.F. Stanfield's daughter advised

Stanfield's lawyers that she had witnessed W.F.'s father abuse W.F. However, this evidence was not elicited at trial. The district court rejected Stanfield's claims of ineffective assistance of counsel because of the strong presumption afforded counsel in the realm of tactics and denied Stanfield the opportunity to introduce evidence that her lawyers had been ineffective. For the reasons set forth in this opinion, we hold the district court erred in summarily dismissing Stanfield's petition without affording her an opportunity to have an evidentiary hearing.

## II. STANDARD OF REVIEW

A petition for post-conviction relief initiates a civil proceeding, even though it is a continuation of an underlying criminal proceeding. Like most civil actions, the burden is on the petitioner to "prove the allegations in the request for relief by a preponderance of the evidence." *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013) (citation omitted). The application for post-conviction relief differs from a complaint in an ordinary civil action in that it must contain much more than a short and plain statement of the claim that would suffice for a complaint under the Idaho Rule of Civil Procedure 8(a)(1). *State v. Abdullah*, 158 Idaho 386, 417, 348 P.3d 1, 32 (2015) (citation omitted). "The application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal." *State v. Yakovac*, 145 Idaho 437, 444, 180 P.3d 476, 483 (2008) (citing I.C. § 19–4903).

> Idaho Code § 19-4906 authorizes summary dismissal of an application for post-conviction relief, either pursuant to motion of a party or upon the trial court's own initiative. Summary dismissal of an application is the procedural equivalent of summary judgment under I.R.C.P. 56. . . . [W]hen reviewing a district court's order of summary dismissal in a post-conviction relief proceeding, we apply the same standard as that applied by the district court. Thus, when reviewing such a dismissal, this Court must determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file.

*Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010) (internal citations and quotation marks omitted).

> "On review of a dismissal of a post-conviction relief application without an evidentiary hearing, this Court will determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file." *Workman v. State*, 144 Idaho 518, 523, 164 P.3d 798, 803 (2007) (citing *Gilpin-Grubb v. State*, 138 Idaho 76, 80, 57 P.3d 787, 791 (2002)). A claim for post-conviction relief may only be summarily dismissed if it does not present a genuine issue of material fact. I.C. § 19-4906(b); *Baldwin v. State*, 145 Idaho 148, 153, 177 P.3d 362, 367 (2008). A genuine issue of material fact exists when "the appellant has alleged facts in his petition that if true, would entitle him

4

to relief." *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004) (internal citations omitted).

Because the analysis of that question requires the courts to evaluate the petitioner's claim "if true," the courts must liberally construe the facts and draw reasonable inferences in favor of the petitioner. *Id.* Additionally, it means that "[a] court is required to accept the petitioner's unrebutted allegations as true...." *Baldwin*, 145 Idaho at 153, 177 P.3d at 367; *Saykhamchone v. State*, 127 Idaho 319, 321, 900 P.2d 795, 797 (1995).

*Wheeler v. State*, 162 Idaho 357, 359, 396 P.3d 1239, 1241 (2017).

## III. ANALYSIS

### A. Ineffective assistance of counsel.

On appeal, all of Stanfield's claims involve allegations of ineffective assistance of counsel. This Court employs the *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984) two-prong test to evaluate whether a criminal defendant received ineffective assistance of counsel. *Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004). Under *Strickland*, "[a] defendant must prove both that (1) counsel's performance was deficient and (2) the deficiency prejudiced the defense." *Adamcik v. State*, 163 Idaho 114, 123, 408 P.3d 474, 483 (2017), *cert. denied*, 138 S. Ct. 1607 (2018); *see also Strickland*, 466 U.S. at 687.

For the deficient-performance prong, "[a]n appellant must demonstrate 'that the attorney's representation fell below an objective standard of reasonableness[.]'" *Adamcik*, 163 Idaho at 123, 408 P.3d at 483 (quoting *Gilpin-Grubb v. State*, 138 Idaho 76, 81, 57 P.3d 787, 792 (2002)). The appellant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. In addition, "strategic and tactical decisions will not be second guessed or serve as a basis for post-conviction relief under a claim of ineffective assistance of counsel unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective review." *Pratt v. State*, 134 Idaho 581, 584, 6 P.3d 831, 834 (2000) (citation omitted).

In order to prove the prejudice prong, "the appellant must show a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The

likelihood of a different result must be substantial, not just conceivable." *Adamcik*, 163 Idaho at 123, 408 P.3d at 483 (internal citations and quotation marks omitted).

**B.     The district court erred by summarily dismissing three of Stanfield's claims.**

1.     <u>There is a genuine issue of material fact as to whether Stanfield's lawyers were deficient by not presenting evidence that someone other than Stanfield abused W.F.</u>

During Stanfield's trial, the State introduced substantial evidence that W.F. had suffered abuse prior to December 11, 2009, the date Stanfield called for emergency help. During his closing argument, the prosecutor spent significant time detailing W.F.'s injuries, both old and new, including bruises, head injuries, hemorrhages, and damage to the abdomen. In addition, the prosecution described W.F.'s behavior as that of an abused child. Specifically, W.F., a two year old, was pulling out his eyelashes and pinching himself hard enough to self-inflict pain. His weight had also declined. Although the State never explicitly mentioned that Stanfield was the perpetrator, it clearly implied that she was. Without evidence that someone else inflicted the abuse, the jury was left to infer that Stanfield was the person responsible for the abuse of W.F.

Stanfield alleges that her trial lawyers were ineffective for failing to present an alternate explanation for W.F.'s abuse, even though they had evidence that W.F.'s father had abused W.F. prior to his death. She argues that without this evidence, the jury was left to infer that Stanfield had abused W.F. and, therefore, that it was more likely that she had abused him on the day in question, ultimately causing his death. In support of her petition, Stanfield filed: (1) an affidavit from Stacie Duval, Stanfield's daughter; (2) a police report containing an interview of W.F.'s biological mother; and (3) her own sworn declaration. Each of these documents raise an issue of fact by suggesting that W.F.'s father had previously abused W.F. Further, because Stanfield's daughter had discussed her observations with Stanfield's lawyers, the documents demonstrated that Stanfield's attorneys were aware of these allegations. However, for reasons that remain unexplained, Stanfield's lawyers never attempted to rebut the State's implication that Stanfield had abused W.F.

Stanfield does not argue that her lawyers should have objected to the State's evidence regarding the prior abuse. Rather, she contends that her lawyers should have presented evidence that someone else committed the abuse. The district court stated that a failure to present such evidence is similar to a situation in which "the defense fails to object under I.R.E. 404(b) to evidence of a defendant's prior bad acts." Stanfield's contention is that the failure to introduce

6

evidence that someone else abused W.F. allowed the jury to convict her on propensity grounds. The district court's comparison to an I.R.E. 404(b) issue is warranted. However, the district court summarily dismissed Stanfield's claim because it found that decisions regarding the presentation of evidence were tactical decisions.

The documents submitted by Stanfield created a genuine issue of material fact as to whether her trial lawyers were deficient. The district court focused on the lack of an affidavit from Stanfield's trial lawyers regarding whether the decision was strategic. However, the documents submitted, if true, were enough to create a genuine question as to whether Stanfield's trial lawyers were ineffective. Consequently, an evidentiary hearing should have been conducted.

Stanfield submitted evidence to the district court from two sources that W.F.'s father had abused W.F. on prior occasions. There was a police report[1] detailing a conversation with W.F.'s mother, Valerie Thorpe, in which she stated W.F.'s father had abused W.F. in the past. Thorpe also provided the police with a hand-written note imploring them to investigate W.F.'s father as a possible perpetrator because of his violent tendencies and previous abuse of W.F. There was also an affidavit from Stanfield's daughter, Stacie Duval, that stated she had witnessed W.F.'s father abuse W.F. on multiple occasions. Additionally, Duval's affidavit indicated she had advised Stanfield's lawyers of the abuse and provided evidence that the lawyers' decision to forego the testimony implicating W.F.'s father of abusing W.F. was not a strategic decision. First, Duval stated Stanfield's attorneys told her "the defense would not be able to present evidence of Lance's record at the trial." Next, she stated, "[w]hen I tried to tell [Stanfield's] attorneys about some of the particular incidents of abuse that Lance directed toward [W.F.], they told me it was too late for them to bring it in the case." Assuming these statements to be true as

---

[1] The Uniform Post-Conviction Procedure Act requires that the petitioner attach "[a]ffidavits, records, or other evidence supporting [her] allegations" to the petition for post-conviction relief. I.C. § 19-4903. Here, the police report is "other evidence supporting" Stanfield's allegation. In essence, Stanfield's allegation is that her attorneys were ineffective for failing to introduce evidence that W.F.'s father abused W.F., which is detailed in the police report. We recognize that our case law states that the petition must include "admissible" evidence supporting the allegations. *See, e.g.*, *Thumm v. State*, 165 Idaho 405, 412, 447 P.3d 853, 860 (2019). However, our case law has been ambiguous as to what constitutes "admissible evidence" in the context of post-conviction cases. *See Severson v. State*, 159 Idaho 517, 520, 363 P.3d 358, 361 (2015) (recognizing that post-conviction relief cases are civil in nature despite the underlying criminal conviction). In this case, the gravamen of Stanfield's allegation is that her attorneys failed to introduce certain exculpatory evidence; accordingly, any evidence supporting that claim only needed to be admissible at her criminal trial to support the allegation that Stanfield's attorneys were ineffective. It is therefore not necessary that the evidence be admissible at the continuing civil proceeding for post-conviction relief to constitute "evidence supporting [her] allegations." Here, the police report would have been admissible at Stanfield's criminal trial. *See* I.R.E. 803(8) (allowing the admission of a police report by an accused in a criminal case). As a result, the police report substantiates Stanfield's claim that her attorneys were ineffective. Notably, this is a narrow exception and does not necessarily apply to all evidence submitted with a post-conviction petition.

required by the procedural posture of this matter, there is a genuine issue of material fact as to whether Stanfield's lawyers made a strategic decision to not present the evidence of an alternate perpetrator, or whether such strategy was based on "inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective review."[2] *Pratt*, 134 Idaho at 584, 6 P.3d at 834 (citation omitted).

Additionally, the district court relied on *Ramsey v. State*, 159 Idaho 887, 891, 367 P.3d 711, 715 (Ct. App. 2015) when it should have relied on *Bias v. State*, 159 Idaho 696, 365 P.3d 1050 (Ct. App. 2015). In both cases, the inadmissible evidence concerned past allegations of rape against each of the defendants and counsel failed to object to the testimony. *Ramsey*, 159 Idaho at 891, 367 P.3d at 715; *Bias*, 159 Idaho at 704, 365 P.3d at 1058. However, the cases arrived at opposite conclusions with no discussion as to why. In *Ramsey*, the Court of Appeals held that Ramsey had not created a genuine issue of material fact regarding deficient performance due to his failure to present evidence of inadequate preparation, ignorance of the law, or other shortcomings capable of objective evaluation. *Ramsey*, 159 Idaho at 891, 367 P.3d at 715. In comparison, in *Bias*, the court held that an evidentiary hearing was required when the petitioner had alleged that his trial counsel had been deficient because of a failure to object to the evidence, and the evidence would likely have been excluded if Bias's attorney had objected to it. *Bias*, 159 Idaho at 704, 365 P.3d at 1058. While no explanation is apparent as to why the Court of Appeals arrived at different outcomes in substantially similar cases, we hold that the outcome in *Bias* is more appropriate because of the relative burdens on a motion for summary dismissal. To hold otherwise would place an impermissibly high hurdle for a petitioner to overcome when seeking an evidentiary hearing.

Next, there is an issue of material fact regarding prejudice. Here, the district court wrote,

> But because the State repeatedly mentioned W.F.'s old bruises, as well as the behavioral signs that he had been abused, and didn't present evidence of who the past abuser was, the jury could have inferred that Stanfield was responsible for the

---

[2] The district court was critical of Stanfield's post-conviction lawyers because the record did not include an affidavit from Stanfield's trial lawyers: "One way or another—by obtaining an affidavit, or by seeking permission to conduct a deposition—she could've obtained and presented evidence of her [trial] counsel's [sic] reasoning." However, while discovery disclosing trial counsels' tactical decision-making would normally be helpful, it was unnecessary under the circumstances. If trial counsel provided an affidavit indicating the decision to forego this evidence was tactical, Duval's affidavit would impeach that testimony. If trial counsel testified that the decision was not tactical, then Duval's testimony would corroborate trial counsels' testimony. Either way there is a genuine issue of fact to be resolved at an evidentiary hearing.

past abuse the prosecutor contended had occurred. This opens the possibility that the jury convicted her on propensity grounds.

Accordingly, because the jury could have convicted Stanfield on propensity grounds, the failure to introduce evidence of the prior abuse by W.F.'s father undermines the confidence in the outcome of the trial. There is a material question of fact as to whether the outcome would have been different had evidence been presented that someone other than Stanfield had committed the abuse. While there were suggestions and innuendo suggesting that Stanfield abused W.F., there was no direct evidence. There was direct evidence that the perpetrator of the prior abuse of W.F. was W.F.'s father. However, for reasons that remain unexplained, Stanfield's lawyers did not present this potentially compelling evidence. An evidentiary hearing is the best mechanism for Stanfield's lawyers to explain their trial tactics, be they strategic or otherwise.

Therefore, because there is a genuine issue of material fact as to (1) whether Stanfield's trial lawyers were deficient, and (2) whether there is a substantial likelihood of a different result had they elicited the testimony that was available, the district court erred in summarily dismissing Stanfield's claim.

2. There is a genuine issue of material fact as to whether Stanfield's lawyers were deficient in not offering evidence of her emotional state.

During Stanfield's trial, witnesses testified that when they arrived at Stanfield's home following the 911 call, Stanfield was unemotional, indifferent, or not normal. Additionally, the prosecutor argued in closing arguments that Stanfield had not expressed emotion surrounding W.F.'s fall and eventual death. The prosecutor also emphasized that Stanfield's actions were "inconsistent with innocence." In response, the defense put on lay witnesses to explain Stanfield's typical demeanor; however, despite having disclosed a mental health expert regarding this issue, no expert was called at trial.

Stanfield alleges that her trial lawyers were ineffective due to a failure to present expert testimony from Dr. Craig W. Beaver to explain her lack of emotion after W.F.'s injury. In her petition, Stanfield included a letter from Beaver that explained that due to multiple traumatic incidents in her life,[3] "it is not unusual that she could appear unemotional, disorganized and compulsive." Stanfield argues that without this testimony the jury was able to infer a consciousness of guilt due to her lack of emotion.

---

[3] According to Beaver's letter, Stanfield had suffered from sexual abuse as a child, the death of an adult son, and the killing of a daughter by the police.

The district court summarily dismissed Stanfield's claim because it found that decisions regarding the presentation of evidence are tactical decisions. For reasons similar to those noted above, the district court erred in dismissing Stanfield's claim.

Here, trial counsel had performed all the necessary pretrial work to be able to call Beaver at trial, including listing him as a witness. Stanfield has alleged that it was unreasonable not to call a witness who would have been helpful in explaining Stanfield's flat affect or lack of emotion. It is hard to understand what was strategically gained by not calling Beaver. Thus, it is possible that her lawyers' conduct fell below the objective standard of reasonableness. Accordingly, there is a material question of fact as to whether the decision not to call Beaver was based on "inadequate preparation, ignorance of the law or other shortcomings capable of objective review." *Pratt*, 134 Idaho at 584, 6 P.3d at 834 (citation omitted).

Further, there is a genuine issue of material fact regarding the probability of a different outcome. The outcome of the trial largely depended on Stanfield's credibility and account of the events at her house at the time W.F. was injured. Her emotional response could go to the jury's assessment of her credibility. Further, the State heavily implied that her lack of an emotional response constituted consciousness of guilt. Therefore, there is a genuine issue of material fact regarding the likelihood of a different outcome, especially when considered as part of the total accumulation of errors.

3. There is a genuine issue of material fact regarding whether Stanfield's trial lawyers were deficient by not objecting to improper statements made by the prosecutor.

During his rebuttal argument, the prosecutor discussed events and circumstances that Stanfield had characterized as "mere coincidences." The particular language that Stanfield now objects to is as follows:

> Ladies and gentlemen, I just want to talk to you one last thing [sic] about coincidences.
>
> This defendant wants you to accept a number of things as mere coincidences. *In order for her to be not guilty of this crime*, she wants you to accept that the following are coincidences.

(Italics added.)

Stanfield alleges that her lawyers were ineffective by not objecting to the prosecutor's statement as shifting the burden of proof to her. Stanfield argues that had trial counsel objected,

the trial court would have stopped the argument, or Stanfield would have had a more favorable appellate review.

The district court dismissed this claim because it found that the prosecution was merely commenting on the defense's case, not implying that Stanfield had the burden of proof. Therefore, any objection by trial counsel would have been unfounded and would have been overruled. On appeal, Stanfield argues that the district court erred in its reasoning because the statements made are "akin to saying that to acquit the defendant the jury must believe the defendant and find that the State's witnesses are not truthful."

"Closing argument 'serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case.'" *State v. Herrera*, 164 Idaho 261, 273, 429 P.3d 149, 161 (2018) (quoting *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007)). Generally, "both parties are given wide latitude in making their arguments to the jury and discussing the evidence and inferences to be made therefrom." *State v. Ehrlick*, 158 Idaho 900, 928, 354 P.3d 462, 490 (2015) (citing *Dunlap*, 155 Idaho at 368, 313 P.3d at 24). Prosecutorial arguments implying that the defense bears the burden of proof are improper, but the prosecution may comment on the defendant's case if it is based solely on inferences from evidence presented at trial. *State v. Moses*, 156 Idaho 855, 869, 332 P.3d 767, 781 (2014).

A prosecutor commits misconduct when he diminishes or distorts the State's burden to prove the defendant's guilt beyond a reasonable doubt. *State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993). In *Adamcik*, this Court held that "comments intended to highlight the weaknesses of a defendant's case do not shift the burden of proof to the defendant where the prosecutor does not argue that a failure to explain them adequately requires a guilty verdict and reiterates that the burden of proof is on the government." *State v. Adamcik*, 152 Idaho 445, 482, 272 P.3d 417, 454 (2012) (citation omitted).

Here, the prosecutor's statements are more akin to the situation mentioned in *Adamcik* where a prosecutor argues that a failure to explain a weakness requires a guilty verdict. *Id.* The statement, "[i]n order for her to be not guilty of this crime" implies that she somehow lost the presumption of innocence. This is not a mere comment on the defendant's case. Stanfield is correct that even if the jury did not believe Stanfield's versions of the events, the State could still have failed to meet its burden and the jury would have had to find her not guilty. Therefore, the district court was incorrect that an objection would have been unfounded. Further, it is unlikely

11

that the failure to object was tactical or strategic, as it appears unlikely that having the prosecutor imply that your client holds the burden of proof would ever be a reasonable tactical decision. Therefore, there is a genuine issue of material fact as to whether Stanfield's lawyers' performance was deficient.

Further, there is a genuine issue of material fact regarding whether the outcome would have been different. The State implied that the only means to acquit Stanfield was to accept her versions of the facts, which may have influenced the jury's determination. However, a jury can simply acquit because it does not find that the State has carried its burden of proof, regardless of the version of the events told by the criminal defendant. Accordingly, Stanfield should be entitled to present evidence at a hearing to establish whether the likelihood of a different outcome is substantial.

**C.** **The district court did not err in dismissing Stanfield's claim regarding lesser-included offense jury instructions because of the acquittal first rule.**

During the jury instruction conference at Stanfield's trial, the State requested confirmation that defense counsel did not intend to request any lesser-included instructions. One of Stanfield's lawyers confirmed and stated, "I don't think there's a factual scenario to have [any] fit." Accordingly, the jury was only instructed regarding first-degree murder and no other lesser-included offenses.

Stanfield alleges that her trial lawyers were ineffective by not requesting jury instructions regarding the lesser-included offenses such as battery, aggravated battery, involuntary manslaughter, and voluntary manslaughter. The district court dismissed Stanfield's claim because it failed to satisfy either the first or second prong of the *Strickland* analysis. We hold that Stanfield cannot prove prejudice because of the acquittal first rule. Therefore, we do not address whether there is a genuine issue of material fact regarding whether counsels' performance was deficient.[4]

---

[4] This Court has concerns about the allegation that Stanfield's lawyers failed to discuss the strategy of not requesting lesser-included offense instructions with her. While it is true that determining whether to request instructions on lesser-included instructions is strategic, it is the type of strategy that should always be discussed with one's client. The United States Supreme Court has stated that defense counsel has a duty to discuss potential strategies regarding "important decisions" with the defendant. *Florida v. Nixon*, 543 U.S. 175, 187 (2004). It is impossible to conclude that lesser-included offense jury instructions are inconsequential and that trial counsel does not need discuss this strategic decision with the defendant. Failure to do so could constitute deficient performance.

This Court has adopted the "acquittal first" rule based on Idaho Code section 19-2132. *State v. Joy*, 155 Idaho 1, 7, 304 P.3d 276, 282 (2013) (citation omitted). The relevant portion of that statute states,

> [i]f a lesser included offense is submitted to the jury for consideration, the court *shall* instruct the jury that it may not consider the lesser included offense unless it has first considered each of the greater offenses within which it is included, and has concluded in its deliberations that the defendant is not guilty of each of such greater offenses.

I.C. § 19-2132(c) (italics added). Thus, under the acquittal first rule, any time a jury is instructed on a lesser-included offense, it must also be instructed to decide the greater charge first. *Joy*, 155 Idaho at 7, 304 P.3d at 282. Only once the jury determines that the defendant is not guilty of the greater charge, i.e., acquitted, may it then turn to a lesser-included offense. *Id.* Consequently, "this leads to the conclusion that the jury would never consider the included offense instruction because 'there is no reason to believe under these circumstances, that the jury would have come to any different conclusion concerning the greater charge.'" *Id.* (quoting *State v. Curtis*, 130 Idaho 525, 528, 944 P.2d 122, 125 (Ct. App. 1996), *aff'd on other grounds,* 130 Idaho 522, 944 P.2d 119 (1997)).

In Stanfield's case, a jury found her guilty of first-degree murder, the greater offense. Having done so, the jury would have had no occasion to consider any of the lesser-included offenses, even if the jury had been given instructions on those offenses. Therefore, Stanfield cannot demonstrate that she was prejudiced by her trial lawyers' decision not to request jury instructions on lesser-included offenses.

Tellingly, Stanfield concedes that under Idaho law, the district court's analysis regarding prejudice was correct. However, Stanfield argues that Idaho law violates due process under the Fourteenth Amendment because it deprives a defendant of the right to have a jury consider the full range of culpability. Stanfield cites *Beck v. Alabama*, 447 U.S. 625, 638 (1980) to support her proposition. In that case, the United States Supreme Court held that a state statute that prohibited judges from giving lesser-included offense instructions when the defendant was charged with a capital crime violated due process. *Id.* Stanfield cites to this lone case and provides almost no further legal analysis.

This Court addressed the due process concerns of the acquittal first rule in *State v. Raudebaugh*, 124 Idaho 758, 864 P.2d 596 (1993). In that case, this Court held that an acquittal

first requirement did not violate the United States Constitution. *Raudebaugh*, 124 Idaho at 762–63, 864 P.2d at 600–01 (citing *Beck*, 447 U.S. at 637). Similarly, other jurisdictions have held that an acquittal first instruction does not violate due process. *See Oregon v. Horsley*, 8 P.3d 1021 (2000); *Washington v. Labanowski*, 816 P.2d 26, 36 (1991); *United States v. Moccia*, 681 F.2d 61, 64 (1st Cir. 1982) (the well-established rule of requiring unanimity on the greater offense does not violate due process); *Pharr v. Israel*, 629 F.2d 1278, 1282 (7th Cir. 1980) ("acquittal first" instruction does not violate either due process or the right to trial by jury); *Arizona v. Lee*, 944 P.2d 1204, 1216 (1997) ("acquittal first" requirement does not violate the United States or Arizona Constitutions).

Accordingly, the district court did not err in summarily dismissing Stanfield's claim regarding the lesser-included jury instructions. Thus, we affirm that portion of the district court's decision.

## IV. CONCLUSION

For the reasons set forth in this opinion, this Court vacates in part and affirms in part the district court's judgment summarily dismissing Stanfield's petition for post-conviction relief. The case is remanded to the district court to conduct an evidentiary hearing on Stanfield's remaining claims of ineffective assistance of counsel.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.