**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50373**

| | |
|---|---|
| JASON ANDREW GODWIN, SR., | ) |
| | ) **Filed: December 31, 2024** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| STATE OF IDAHO, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Idaho County. Hon. Jay P. Gaskill, District Judge.

Order of the district court summarily dismissing amended petition for post-conviction relief, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Jason Andrew Godwin, Sr. appeals from the district court's order summarily dismissing his amended petition for post-conviction relief. Specifically, Godwin argues that the district court erred when it summarily dismissed his ineffective assistance of counsel claims, and that the district court erred when it dismissed his jurisdictional claim. We affirm.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

In 2016, a jury found Godwin guilty of second degree murder for shooting and killing Kyle Anderson. This confrontation occurred after one of Godwin's friends, James Robinette, told Godwin that Anderson had stolen guns from Robinette and that Robinette's father was offering a $500 reward for recovering the guns. At the time, Anderson lived in a large motorhome on a pullout along the Clearwater River about a half mile outside of Kooskia. Godwin drove to the

1

location and pulled up to Anderson's motorhome while Anderson and his girlfriend, Amanda Jones, were outside. In Godwin's vehicle, Phyllis "Carla" Griner (aka Cutler) sat in the passenger seat, Ernest "Ernie" Ruiz sat behind Griner in the back passenger seat, and Beau Lynch sat behind Godwin in the driver's side backseat.

The events that followed were contested at trial. At some point after arriving, Godwin shot Anderson through the neck. An autopsy showed that abrasions on Anderson's back were consistent with someone having dragged Anderson by his feet along the gravel. Anderson's body was left on the gravel next to his motorhome. Godwin left the scene with Anderson's gun and drove back towards Kooskia.

The next morning, Godwin met with Detective Hewson at the Kooskia County Sheriff's office. Although he initially denied being at the scene where Anderson was shot, Godwin later admitted to shooting Anderson in self-defense after Anderson pulled a gun on him. The State charged Godwin with second degree murder.

Godwin filed a motion to suppress, claiming the statements he made during the law enforcement interview "were involuntary and he had invoked his right to counsel and refused to waive his *Miranda*[1] rights." The trial court denied the motion. At trial, Godwin testified and the audio recording of Godwin's interview with Detective Hewson was played. The jury found Godwin guilty of second degree murder. Godwin appealed and the Idaho Supreme Court affirmed the denial of Godwin's motion to suppress. *State v. Godwin*, 164 Idaho 903, 436 P.3d 1252 (2019).

Godwin filed a pro se petition and affidavit for post-conviction relief. Later, Godwin, through counsel, filed an amended petition for post-conviction relief alleging a jurisdictional claim and ineffective assistance of counsel claims. Godwin claimed the district court lacked jurisdiction because the crime occurred on an Indian reservation and Godwin is Indian. After a two-day evidentiary hearing on Godwin's jurisdictional claims, the district court found that the crime had occurred on an Indian reservation but held that Godwin failed to establish that he was recognized as an Indian.

On the ineffective assistance of counsel claims, Godwin alleged his trial counsel was ineffective for: (1) failing to call Cutler as a witness at trial or to request a continuance to ascertain her unavailability to testify; (2) failing to investigate a modification to the audio recording of

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Godwin's interview with Detective Hewson; and (3) failing to present evidence that Godwin was handcuffed when he arrived at the sheriff's office for an interview in support of his motion to suppress. The district court summarily dismissed Godwin's ineffective assistance of counsel claims. Godwin appeals.

## II.

## STANDARD OF REVIEW

Whether a court lacks jurisdiction is a question of law, over which this Court exercises free review. *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004).

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan v State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Baxter v. State*, 149 Idaho 859, 861, 243 P.3d 675, 677 (Ct. App. 2010). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the district court's factual findings unless they are clearly erroneous. Idaho Rule of Civil Procedure 52(a); *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Baxter*, 149 Idaho at 862, 243 P.3d at 678.

## III.

## ANALYSIS

Godwin claims that the district court erred in finding that he was not recognized as an Indian and denying his jurisdictional claim. Godwin also claims that the district court erred in summarily dismissing his ineffective assistance of counsel claims.

## A.    Jurisdictional Claim

Godwin argues that the district court erred when it dismissed his lack-of-jurisdiction claim, because "the crime occurred within Indian country and Mr. Godwin was Indian." The State argues that, because jurisdiction may be raised at any time, Godwin is barred from raising this claim in post-conviction because Godwin could have asserted the claim on direct appeal. We hold that because the trial record was insufficient for the claim to have been raised on direct appeal, Godwin properly raised the issue in his post-conviction petition. *See Lewis v. State*, 137 Idaho 882, 55 P.3d 875 (Ct. App. 2002).

As to the merits of Godwin's jurisdictional claim, first, it is undisputed that the crime occurred within Indian country. The question here is whether Godwin is considered "Indian" for jurisdictional purposes. The Idaho Supreme Court has developed a two-prong test: "(1) the defendant must have a significant percentage of Indian blood; and (2) the defendant must be recognized as an Indian either by the federal government or some tribe or society of Indians." *State v. George*, 163 Idaho 936, 938, 422 P.3d 1142, 1144 (2018). The district court found that Godwin had established that he had "some degree of Indian blood" and held that this was sufficient under the first prong in *George*.[2]

As to the second prong, the district court found that Godwin was not recognized as Indian. The district court heard testimony from several witnesses regarding Godwin's activities and affiliations with the Nez Perce Tribe in the area.[3] The testimony established that while Godwin was involved in various activities on tribal land and in association with tribal members, the members themselves did not view Godwin as Indian, nor as a tribal member. Godwin's argument that his activities with the tribe constitute "significant ties" and are sufficient to satisfy *George* is incorrect. It does not matter what Godwin himself perceives or does with the Nez Perce Tribe, but rather how the Nez Perce Tribe perceives Godwin, i.e., whether *the tribe* recognizes him as Indian. Godwin acknowledges that the evidence shows the Nez Perce Tribe "may not have viewed him as a member of *their* tribe." Further, none of the Nez Perce Tribe members testified that they were

---

[2]    The State claims that the proper test, as articulated by the Court in *George*, requires a finding of a "significant" amount of Indian blood, not merely "some." The State asserts that Godwin did not establish that his 6.25% Indian blood constitutes a "significant" amount of Indian blood and thus the first prong under *George* is not satisfied. As Godwin failed to satisfy the second *George* prong, we need not decide this issue.

[3]    No evidence established that Godwin was recognized as Indian by the federal government.

even aware of Godwin's Costanoan heritage. Godwin does not dispute the district court's findings, only its conclusion. The evidence supports the district court's conclusion that Godwin was not recognized as Indian. Therefore, the court's dismissal of Godwin's lack of jurisdiction claim is affirmed.

**B.     Ineffective Assistance of Counsel Claims**

Godwin claims that the district court erred in dismissing his claims that counsel was ineffective for: (1) failing to call Cutler as a witness at trial or to request a continuance to ascertain her unavailability to testify; (2) failing to investigate a modification to the audio recording of Godwin's interrogation; and (3) failing to present evidence in support of his motion to suppress that Godwin was handcuffed when he arrived at the sheriff's office for an interview.

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor.

5

For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

### 1. Calling Cutler as a witness

Godwin claims that trial counsel was ineffective for failing to call Cutler as a witness at trial. Godwin contends that counsel told him that Cutler was unavailable as she had a stroke and was too ill to testify. Godwin asserts that, in fact, Cutler only had laryngitis. Thus, Godwin argues that counsel should have verified whether Cutler was unavailable, sought to continue the trial to investigate her unavailability, or considered whether to depose her to present her statements to the jury. Godwin claims there was no strategic or tactical reason not to call a witness that would

6

support his self-defense claim. He also asserts this deficiency prejudiced him because the jury did not have the benefit of this testimony supporting his self-defense claim.

As to Cutler's unavailability, Godwin claims that he was "later" told that Cutler only had laryngitis. Godwin does not explain the source of this information and, thus, it is purely hearsay. Where a petitioner's affidavit is based upon hearsay rather than personal knowledge, summary disposition without an evidentiary hearing is appropriate. *Takhsilov v. State*, 161 Idaho 669, 673, 389 P.3d 955, 959 (2016). Godwin claims that counsel should have verified the information that Cutler had a stroke and, if necessary, sought a continuance to do so. Godwin provides no evidence that counsel had any reason to doubt the information regarding Cutler's availability that counsel communicated to Godwin. Indeed, during opening statement trial counsel told the jury that counsel planned to call Cutler to testify. Godwin provides no other evidence that Cutler could have testified at trial or by deposition.

Godwin claimed Cutler had previously stated to law enforcement that during the incident in question Anderson had pulled a gun on Godwin before Godwin shot Anderson. In support of the claim, Godwin provided a "supplemental police narrative" of the interview between Cutler and a law enforcement officer and his post-conviction counsel's own unofficial "transcript" of a portion of the audio recording of that interview.[4] Godwin asserts that counsel knew of the substance of Cutler's testimony as the supplemental police narrative was provided during discovery. As noted, counsel planned to call Cutler so it is reasonable to infer that counsel was aware that she had knowledge of the incident.

The district court ruled that Godwin failed to provide admissible evidence regarding the substance of Cutler's testimony. The district court determined that Godwin's hearsay statements on Cutler's testimony were insufficient. It is not enough to allege that a witness would have testified to certain events at trial without providing through affidavit or other competent nonhearsay evidence of the substance of the witness's testimony. *Adams v. State*, 161 Idaho 485, 499, 387 P.3d 153, 167 (Ct. App. 2016).

---

[4] Godwin did not include the "transcribed" audio as evidence in support of his post-conviction petition.

Godwin argues that, aside from not calling Cutler as a witness, counsel was ineffective in failing to present her statements via the supplemental police narrative. Both the officer's statements in the narrative of what Cutler told him and the "transcript" of the audio contain at least two layers of hearsay. The supplemental police narrative contains a summary of the officer's interview with Cutler and indicates that Cutler "thought" she saw Anderson pull a gun on Godwin.[5] The narrative and the transcript also recount purported statements made by Cutler regarding statements Godwin made to Anderson. The narrative is the officer's statement (first declarant), which contains a statement by Cutler (second declarant), which contains a statement by Godwin (third declarant). Similarly, Godwin's transcription of the officer's (first declarant) interview of Cutler contains statements by Cutler (second declarant). Godwin argues that these are not hearsay because they are being offered only to show that counsel was aware of this witness and therefore should have presented Cutler's testimony. However, the truth of these statements is key to Godwin's claim that this would support his self-defense theory.

However, Godwin argues that the supplemental police narrative is admissible pursuant to Idaho Rule of Evidence 803(8)(A)(ii)(b) which provides for admission of an investigative report by law enforcement personnel when offered by an accused in a criminal case. Godwin relies on a footnote in *Stanfield v. State*, 165 Idaho 889, 454 P.3d 531 (2019) in which the Idaho Supreme Court noted that a police report identifying a potential alternate perpetrator would be admissible pursuant to I.R.E. 803(8)(A)(ii)(b) in a post-conviction summary dismissal proceeding. *Stanfield*, 165 Idaho at 896 n.1, 454 P.3d at 538 n.1. The State argues that even if the officer's narrative was to be generally admissible under Rule 803(8)(A)(ii)(b) it does not automatically allow in the other layers of hearsay within the document, i.e., the statements of Godwin and Cutler, each being an additional layer of hearsay. We agree. Each part of a hearsay-within-hearsay statement must conform to a hearsay exception in order to be admissible. *State v. Guerra*, 169 Idaho 486, 500, 497 P.3d 1106, 1120 (2021); *see also* I.R.E. 805. Even if I.R.E. 803(8)(A)(ii)(b) would allow the first layer of hearsay, there is nothing in the text of the rule that further excepts additional layers of hearsay. As such, Godwin's reliance on *Stanfield* is misplaced as it does not support the

---

[5] Post-conviction counsel's transcription of the interview with Cutler includes Cutler allegedly saying she "think[s]" Anderson pulled a gun on Godwin but that she "didn't see" what the gun looked like.

8

wholesale admission of the officer's narrative and all hearsay statements therein. The supplemental report, as noted, contains multiple layers of hearsay for which Godwin has failed to show an exception applies. Consequently, Godwin's claim that counsel was ineffective for failing to introduce the report fails.

The district court also inferred from the evidence that counsel's trial decision as to Cutler's purported statements was tactical because the statements were equivocal. As noted, the report indicates that Cutler "thought" she saw Anderson pull a gun on Godwin and the "transcript" indicates she "think[s]" Anderson pulled a gun on Godwin but that she "didn't see" what the gun looked like. The district court pointed out that Cutler did not say she actually observed Godwin acting in self-defense. The district court found that Cutler gave conflicting stories and the only thing she appeared to be sure of was that a shot was fired. In addition, the substance of Cutler's statements was admitted at trial through the audio of Godwin's interview. In closing, defense counsel stated:

> We didn't hear from Carla at trial; though we did hear in an interview between [Godwin] and Deputy Hewson what Carla's position was. Recall that Deputy Hewson told [Godwin] that he heard something from Carla that supported [Godwin's] claim of self-defense, and in particular he was referring to what [Godwin] had said to [Anderson] prior to the shot ringing out.

Even considering the statements, Godwin has not shown error in the district court's determination that Cutler failed to demonstrate that counsel's decision was based on inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation. *Gonzales*, 151 Idaho at 172, 254 P.3d at 73.

Godwin has also not shown how Cutler's statements would have resulted in a different outcome at trial. The only evidence the district court was able to assess is Godwin's allegations of what Cutler "would have" testified to at trial. Even if Cutler's statements were true, Godwin has not shown how another, uncertain witness would have changed the outcome of the trial and that counsel was, therefore, ineffective for not calling the witness. *See Dunlap v. State*, 170 Idaho 716, 731, 516 P.3d 987, 1002 (2022) ("Dunlap cannot simply assert on appeal that defense counsel should have put on more witnesses, especially when the additional witnesses would have offered similar testimony to that already presented."). Accordingly, the district court did not err in dismissing this claim.

9

## 2. Interview recording

Godwin claimed that his trial counsel was ineffective with respect to an alleged modification of the audio recording of Detective Hewson's interview with Godwin. The alleged modification involved a change from Godwin saying he intended to take Anderson's body to the "emergency shed" to saying he intended to take Anderson's body to "the river." First, Godwin claimed that he was unable to listen to the recording of the interview before trial, and his trial counsel never played the recording for him. He also alleged that jail staff took the recording away from him prior to trial and counsel did nothing to assist in retrieving the audio and playing it for Godwin. Further, Godwin asserted that he did not hear the full recording until trial. These allegations are belied by Godwin's own testimony:

> Q. Nobody forced you to come talk to Detective Hewson?
> A. No.
> Q. And we've listened to that interview, right?
> A. Yeah.
> Q. Had you listened to it before?
> A. Yeah, vaguely.
> Q. Okay. What do you mean, vaguely?
> A. I listened to it probably six to eight months ago with Victoria Olds as being the attorney at that time.

That Godwin may have "vaguely" listened to the audio belies his claims. Additionally, Godwin testified that he did not remember saying "the river." Godwin did not claim on the stand that he instead said the "emergency shed." In fact, when asked if he agreed that he said "the river" to Detective Hewson, Godwin responded "I guess I did because it's on the tape." Godwin did not, at that time, claim that the tape was modified. Godwin provided no actual evidence tending to show that the tape was modified.

Godwin claimed that the recording "could have been" modified and that he told counsel that the tape may have been modified and counsel did nothing, including requesting a continuance to investigate the matter or, at the very least, cross-examine Detective Hewson regarding the alleged alteration. Godwin argues that these allegations must be taken as true.

In its notice of intent to dismiss, the district court stated:

He only states that he told his attorney the recording misrepresented what he said. He does not present any evidence of what counsel's response was or why the response was deficient. Thus, the Court doesn't know if the advice showed inadequate preparation, ignorance of the relevant law, or other shortcomings of counsel capable of objective review. Without such evidence, the Court can only

10

assume that any decision counsel made regarding the interview recording was a tactical or strategical decision, which this Court does not second-guess.

Even considering Godwin's claim that he told counsel that the audio could have been modified, he has not shown that counsel's decision to not further investigate was not a reasonable tactical or strategic decision or was based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales*, 151 Idaho at 172, 254 P.3d at 73.

Moreover, the district court determined that Godwin failed to make a prima facie showing of prejudice, noting the other evidence of guilt. Other than to claim that the accuracy of the interview was central to his claim of self-defense, Godwin makes no showing of how, but for counsel's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177. The evidence of whether Godwin intended to take Anderson's body to the "emergency shed" or "the river" after the shooting is of very little importance in regard to whether the shooting was in self-defense. The district court did not err in determining that Godwin failed to make a showing of prejudice.

Godwin has failed to show that an issue of material fact existed as to whether counsel's decision not to investigate the recording was based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective review. We therefore affirm the district court's dismissal of this claim.

### 3. Suppression hearing

Godwin claimed that his trial counsel was ineffective for failing to call him as a witness or present his statements made during the police interview in a sworn declaration in support of his motion to suppress. Godwin asserted he told counsel that a second officer handcuffed him when he arrived at the sheriff's office and took the handcuffs off when Godwin reached the interview room. Godwin claimed he told counsel that he had been handcuffed and there was no strategic or tactical reason not to include his testimony at the suppression hearing. He further alleged that this fact would have been material to his claim that he was subject to a custodial interrogation. Godwin asserts that the fact of being handcuffed prior to the interview would lead a reasonable person to believe he was in custody. The State argues that, even if Godwin was handcuffed before the interview, under the totality of the circumstances, it does not change the conclusion that he was not in custody during the interview.

11

The district court held that "Godwin has not presented admissible evidence that shows that counsel's advice to not testify was anything other than a strategic[] decision." The district court noted that even if Godwin had made such a showing he had not shown how he was prejudiced by the advice:

> Presumably, Godwin wanted to testify that he was handcuffed to show that he was in custody and that his confession should be suppressed because the *Miranda* warning had not been read to him prior to his confession. The Court did find that Godwin was not handcuffed before the interview, but that was only one factor of the many used to determine that under the totality of circumstances, Godwin was not in custody.

The district court found that, even with the additional allegation that Godwin was temporarily handcuffed before the interview began, the suppression motion would have failed. The district court acknowledged that the suppression motion findings included that Godwin was not handcuffed before the interview. However, the district court discounted the weight of this finding because it "was only one factor of the many used to determine that under the totality of circumstances, Godwin was not in custody."

A person is in custody whenever subjected to a restraint on his or her liberty in any degree similar to a formal arrest. *State v. Hansen*, 138 Idaho 791, 795, 69 P.3d 1052, 1056 (2003). To determine whether a person is in custody, the court looks to the totality of the circumstances surrounding the interrogation. *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). The factors to aid the custody determination include where the questioning occurred, the duration of the interrogation, whether the defendant is informed that the detention may not be temporary, and the intensiveness of the questions and the requests of the police officer. *Godwin*, 164 Idaho at 915, 436 P.3d at 1264. The test is an objective one, and the inquiry centers on how a reasonable person in the suspect's position would have understood the situation. *James*, 148 Idaho at 577, 225 P.3d at 1172.

On direct appeal from his conviction, Godwin argued that the district court erred in denying his motion to suppress. The Idaho Supreme Court affirmed the district court. The Supreme Court analyzed all of the relevant factors. First, the Court noted that while the questioning occurred at the Kooskia Sheriff's Office, *Miranda* warnings are not required simply because the questioning takes place in the station house, but only where there has been such a restriction on a person's freedom as to render him in custody. The Court held that the hallmarks of a coercive environment were absent in this instance. The Court further noted that Godwin conceded that he was not in

custody when he sat down with Officer Hewson to answer questions. Moreover, Godwin arrived at the police station voluntarily, was interviewed in a working part of the sheriff's office rather than an interrogation room, the conversation was recorded with a digital audio recorder which was visible to Godwin during the duration of the interview, and the interview lasted around fifty minutes, during which Godwin exited the station to have a cigarette break (albeit accompanied by an officer). The Court held: "This is not the 'sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.'" *Godwin*, 164 Idaho at 916-17, 436 P.3d at 1265-66.

Next, the Supreme Court held that "intensiveness" of police questioning did not weigh in favor of custody. The Court noted that, although other officers interacted with Godwin while he was at the station, Officer Hewson was the only police officer in the room with Godwin while he was being questioned and at no time during the interview was Godwin patted down, handcuffed, or otherwise physically restrained. *Id.* at 917, 436 P.3d at 1266.

Third, the Court reiterated that tactics used by the officer during an interrogation may be considered when determining whether the interview was coercive but are only part of the totality of the circumstance inquiry for custody. The Court noted that the district court found there was no coercive police conduct and that while Detective Hewson did not expressly tell Godwin that he was not under arrest or free to leave, the district court correctly noted that he did not tell Godwin that he had to stay and answer questions. *Id.* The Court also held that Godwin's subsequent arrest did not automatically mean that Godwin was "in custody" during the interview. *Id.* The Court concluded that the totality of the circumstances showed that Godwin was not in custody during the interview with Detective Hewson. *Id.* at 918, 436 P.3d at 1267.

As the district court held, even assuming that Godwin was handcuffed upon arriving at the sheriff's office and while led to the interview room, under the totality of the circumstances, he was not in custody during the interview. Being handcuffed prior to the interview does not alter the totality of the circumstances analysis as detailed by the Idaho Supreme Court. Therefore, even if Godwin had testified at the suppression hearing that he was in handcuffs *prior* to the interview, the outcome would have remained the same. The district court correctly determined that Godwin failed to show how counsel's decision to not have him testify at the suppression hearing resulted in any prejudice. We therefore affirm the district court's dismissal of this claim.

13

## IV.

## CONCLUSION

Godwin has failed to show error in the district court's denial of his jurisdictional claim. Further, the district court did not err in holding that Godwin failed to establish a prima facie case with respect to his ineffective assistance of counsel claims. Therefore, the judgment of the district court summarily dismissing Godwin's petition for post-conviction relief is affirmed.

Judge LORELLO and Judge TRIBE **CONCUR**.