17 P.3d 901

STATE of Idaho, Plaintiff–Appellant,

v.

Lawrence L. WARD, Defendant–
Respondent.

No. 25805.

Court of Appeals of Idaho.

Jan. 16, 2001.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Racine, Olson, Nye, Budge Bailey, Pocatello, for respondent. Mitchell W. Brown argued.

PERRY, Judge.

The state appeals from the district court's order on appeal from the magistrate division, affirming in part and reversing in part, a judgment of conviction for driving under the influence. For the reasons set forth below, we affirm in part, reverse in part, and remand.

## I.

## BACKGROUND

On January 24, 1998, Lawrence L. Ward was stopped by a Montpelier city police officer because the trailer Ward was towing had no license plate or taillights. As the officer approached the vehicle, he detected a strong odor of alcohol and noticed that Ward's eyes were bloodshot and his speech was slurred. The officer administered field sobriety tests and placed Ward under arrest for driving under the influence (DUI). At the police station, Ward submitted to a breathalyzer test and was charged with DUI.

Prior to trial, Ward filed a motion in limine seeking to exclude evidence of the breath test. Ward asserted that the foundational requirements for introducing the test into evidence had not been met. After an evidentiary hearing, the magistrate determined that the foundational requirements for admissibility of the test had been met and denied Ward's motion.

On the day originally set for trial, Ward submitted three proposed jury instructions numbered sixteen, seventeen and eighteen. The state objected to instructions sixteen and seventeen, but did not object to instruction eighteen. After argument, the magistrate ruled that instructions sixteen and seventeen would not be given because they were improper statements of the law. Ward then pled guilty to DUI pursuant to Rule 11, specifically reserving his right to appeal the magistrate's rulings regarding the admissibility of the breathalyzer evidence at trial, his proposed jury instructions, and his ability to challenge the reliability and accuracy of the breath test at trial.

Ward appealed to the district court, which affirmed the magistrate's admission of the breathalyzer test results, but reversed the magistrate's decisions as to Ward's proposed jury instructions and Ward's ability to challenge the validity of the breath test at trial. The state appeals.

## II.

### STANDARD OF REVIEW

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993).

## III.

### ANALYSIS

#### A. Foundation for Admissibility

Initially, we note that at the time Ward pled guilty to DUI he specifically reserved his right to appeal the magistrate's rulings regarding the foundation for admissibility of the breathalyzer evidence at trial, his pro-

posed jury instructions, and his ability to challenge the validity of the breath test at trial.[1] Ward appealed to the district court, which affirmed the magistrate's decision regarding the foundation for admissibility of the breathalyzer evidence at trial. The state then appealed the district court's adverse rulings to this Court. Ward did not file a cross appeal from the district court's decision, nor does his appellate brief challenge the admissibility of this evidence. Thus, the magistrate's determination in this regard, and the district court's decision affirming the admissibility of this evidence, remain undisturbed.

#### B. Jury Instructions

■ On appeal, the state argues that the magistrate correctly denied Ward's proposed jury instructions sixteen and seventeen. The question of whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *Bowman*, 124 Idaho at 942, 866 P.2d at 199. Requested instructions do not have to be given, even if they are correct statements of the law, where the subject matter is covered in other instructions actually given to the jury. *State v. Roles*, 122 Idaho 138, 143, 832 P.2d 311, 316 (Ct.App.1992). Therefore, if the requested instruction is either an erroneous statement of the law, adequately covered by other instructions, or not supported by the facts of the case, the instruction need not be given. *State v. Eastman*, 122 Idaho 87, 89, 831 P.2d 555, 557 (1992). A defendant is entitled to an instruction where there is a reasonable view of the evidence presented in the case that would support the theory. *State v. Fodge*,

1. As previously noted by the Idaho Supreme Court, motions in limine seeking advance rulings on the admissibility of evidence are fraught with problems because they are necessarily based upon an alleged set of facts rather than the actual testimony which the trial court could have before it at trial in order to make its ruling. *See State v. Young*, 133 Idaho 177, 179, 983 P.2d 831, 833 (1999). We note that similar problems may arise with respect to pre-trial determinations regarding whether proposed jury instructions should be given. What foundation will be laid at trial, what evidence will be admitted, and what jury instructions should be given at the trial's conclusion are not matters which can always be best determined through a motion in limine.

121 Idaho 192, 195, 824 P.2d 123, 126 (1992); *State v. Olsen*, 103 Idaho 278, 647 P.2d 734 (1982).

■ Idaho Code Section 19–2132(a) states that in "charging the jury, the court must state to them all matters of law necessary for their information. Either party may present to the court any written charge and request that it be given. If the court thinks it correct and pertinent, it must be given; if not it must be refused." When a defendant requests an instruction, I.C. § 19–2132 has been interpreted as requiring a two-prong analysis. *Eastman*, 122 Idaho at 90, 831 P.2d at 558. First, the trial court must determine if the theory presented in the instruction applies to the case. Second, the trial court must then determine if the instruction is a correct statement of the law. If the theory is not supported by the evidence, then the court must reject the instruction. But if the theory is supported by the evidence, then the court must determine if the instruction is a correct statement of law. If it is a correct statement of the law, then the instruction should be given. If the instruction is an incorrect statement of the law, then the trial court is under an affirmative duty to properly instruct the jury. *Id.* at 91, 831 P.2d at 559.

■ In the instant case, Ward's proposed jury instructions sixteen and seventeen purportedly relied on language from *State v. Remsburg*, 126 Idaho 338, 882 P.2d 993 (Ct. App.1994), and *State v. Utz*, 125 Idaho 127, 867 P.2d 1001 (Ct.App.1993). In *Remsburg*, this Court analyzed whether the magistrate correctly excluded the breathalyzer evidence based on the magistrate's determination that the state had not met the preliminary foundational threshold for admissibility. In *Utz*, this Court concluded that absent a foundational showing of compliance with a fifteen-minute observation period, which was an element of the state's own adopted standards for proper administration of the test, the results of the breath test were inadmissible.

Ward's proposed instruction sixteen stated:

In order for the 15–minute observation to be valid, the 15–minute observation pe-

riod must occur immediately prior to the administration of the test.

If the 15–minute observation period does not occur immediately prior to the administration of the test, the test results are invalid.

■ Ward's proposed instruction seventeen stated:

The procedures for administering the breath test are those adopted by the Department of Law Enforcement and contained in the training manual for operation of the Intoximeter 3000. These operating procedures require that the administering officer observed the subject closely for 15 minutes to ensure that the subject does not smoke, consume alcohol, belch, vomit, use chewing tobacco, or have any other foreign substance in the mouth.

If the operating procedures are not complied with, the breath tests are invalid.

Both of Ward's proposed jury instructions dealt with procedures which, pursuant to I.C. § 18–8004(4), must be followed prior to the administration of the breathalyzer test in order to meet the foundational requirements necessary to have the test results admitted at trial. In the instant case, the magistrate had already determined that the results of the breathalyzer test were admissible. Ward's proposed jury instructions attempted to instruct the jury that if the jury determined that the standard for admissibility had not been met the breathalyzer test results were invalid *as a matter of law*. Thus, Ward's proposed jury instructions inappropriately took law relevant to the threshold question of admissibility and attempted to utilize this law to instruct the jury concerning the ultimate weight to be afforded to the breathalyzer results at trial. A jury may factually determine during deliberations that breathalyzer evidence is unreliable or inaccurate and, thus, "invalid" even though it has been deemed admissible by the court. Such a determination, however, is to be based on the factual evidence presented at trial, not on an instruction of law. By analogy, a jury, in its deliberations, could disregard hearsay testimony, *i.e.* an excited utterance, admitted by a trial court pursuant to a hearsay exception because it determined the testimony to be

not credible; but it would be improper for the court to instruct the jury on the evidentiary hearsay rule in order to aid it in its credibility determination. If Ward wished to challenge the "validity" or reliability of the breath test results in front of the jury, it was Ward's burden to present expert testimony, or testimony through cross-examination of the officer, to demonstrate the unreliability of the test *as a matter of evidence*. The information in the rejected instructions about the requirements for proper administration of the test in order to yield reliable test results could have been elicited through cross-examination of the police officer or through a defense expert. A jury instruction, however, is not the appropriate way to put before the jury what is essentially factual information about the functioning of breath test equipment. Rather, this type of instruction may result in the Court making an unfair comment on that evidence.

Thus, Ward's proposed jury instructions were improper because they contained matters that are not so much legal principles as factual information and because they attempted to instruct the jury on a legal standard which was inapplicable to the jury's function as the trier of fact. Thus, we conclude that the magistrate correctly denied Ward's proposed jury instructions. Therefore, Ward has failed to show that the magistrate erred in rejecting jury instructions sixteen and seventeen.

## C. Ability to Challenge Reliability and Accuracy of Breathalyzer at Trial

 Ward further contends that by erroneously ruling that he was prevented from challenging the "validity" of the breathalyzer test at trial, the magistrate deprived Ward of his right to attack the reliability and weight or accuracy of the test before the jury. We first reiterate that the decision whether to admit evidence at trial is generally within the province of the trial court. *See State v. Gilpin,* 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct.App.1999). However, once the trial court has made the threshold determi-

nation of admissibility, a defendant is free to attack the reliability and accuracy of the admitted evidence through the presentation of evidence at trial. *See State v. Bell,* 115 Idaho 36, 40, 764 P.2d 113, 117 (Ct.App.1988). This evidence could include concessions elicited on cross-examination of the officer who administered the test or testimony from a defense expert. As stated previously by this Court:

> Obviously the reliability and performance of any given machine is subject to challenge. If there is evidence that any particular machine has malfunctioned or was designed or operated so as to produce unreliable results, such evidence would be relevant both to the admissibility and the weight of the test results.

*State v. Hartwig,* 112 Idaho 370, 375, 732 P.2d 339, 344 (Ct.App.1987). In addition, a party is free to challenge the officer's actions in observing the suspect for the requisite fifteen-minute period. *See State v. Carson,* 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct. App.1999). Thus, a trial court's "general admissibility of the results of [a breathalyzer test] in no way limits the right of a party to introduce before the jury evidence relevant to the weight and credibility of such evidence." *State v. Van Sickle,* 120 Idaho 99, 104, n. 2, 813 P.2d 910, 915, n. 2 (Ct.App. 1991). The burden of persuading the jury that the test results are accurate remains with the prosecution. *Id.*

 In the instant case, the controversy centers around the use and meaning of the terms "valid" and "validity." We note the considerable discussion between counsel for Ward and the magistrate in attempting to distinguish between "admissibility" and "validity."[2] However, this confusion notwithstanding, the magistrate's ruling had the effect of preventing Ward from challenging the accuracy of the breathalyzer test, the weight to be afforded to the breathalyzer evidence, and the test's overall reliability. Although it is within the province of the trial court to determine the admissibility of evidence, it is

---

**2.** We urge counsel and trial judges below to avoid the use of the terms "validity" and "invalidity" in the context of the breathalyzer test. Discussion of the foundational requirements for

"admissibility" and the defendant's challenge to the "reliability" and "accuracy" may be better reviewed if couched in these terms.

the province of the jury to determine the weight, accuracy, and reliability to be afforded the evidence once it is admitted. The reliability both of the test's results and the process utilized to obtain the evidence are subject to attack. *See Hartwig*, 112 Idaho at 375, 732 P.2d at 344. Therefore, having determined that the breathalyzer test was admissible, the magistrate erred in further ruling that Ward was prohibited from attacking the accuracy, weight, or reliability to be afforded to the test results at trial.

## IV.

## CONCLUSION

Ward has failed to show that the magistrate erred in rejecting Ward's proposed jury instructions sixteen and seventeen. However, we hold that the magistrate erred in ruling that Ward was prohibited from attacking the accuracy, weight, and reliability to be afforded to the breathalyzer evidence at trial. Thus, Ward's judgment of conviction is vacated and this matter is remanded for further proceedings consistent with the Rule 11 plea agreement.

Chief Judge SCHWARTZMAN and Judge LANSING concur.