**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46422**

| | |
|---|---|
| STATE OF IDAHO, ) | **Opinion Filed:  July 16, 2020** |
| Plaintiff-Respondent, ) | |
| v. ) | **Melanie Gagnepain, Clerk** |
| CATHERYN D. FIELDS, ) | |
| Defendant-Appellant. ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Lewis County.  Hon. Gregory FitzMaurice, District Judge.

Judgment of conviction for three counts of battery on a law enforcement officer, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett; Dennis Benjamin, Boise, for appellant. Dennis Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.  Kenneth K. Jorgensen argued.

---

HUSKEY, Chief Judge

Catheryn D. Fields appeals from her judgment of conviction entered upon a jury verdict finding her guilty of three counts of battery on a law enforcement officer, Idaho Code § 18-915(3)(b).  On appeal, Fields argues the district court erred when it denied her request for a proposed jury instruction related to the lawfulness of her arrest.  Because a conviction for battery on a law enforcement officer requires the officer to be acting in performance of a duty, Fields reasons her proposed jury instruction was appropriate because a reasonable view of the evidence shows that her arrest was unlawful and the governing law states an officer executing an unlawful arrest is not acting in performance of a duty.  Fields's proposed instruction was not supported by the facts of the case and was an incorrect statement of law.  Accordingly, the district court did not err by declining to give her proposed instruction to the jury and the judgment of conviction is affirmed.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Sheri Busta and Cindy Trombetta[1] were engaged in conversation on a street corner when a loud, heated conversation drew their attention. They noticed a woman, Fields, yell at a man, Har-V, and she appeared to hit him in the shoulder with her fist. Har-V proceeded to walk into a nearby restaurant and Busta and Trombetta followed him to ensure he was okay. Subsequently, Fields entered the restaurant, swearing and approaching Har-V aggressively. Busta positioned herself between Fields and Har-V. While in the middle of the altercation, Busta believed she saw Fields strike Har-V again.[2] Trombetta attempted to escort Fields out of the establishment; however, before they reached the door, Fields turned around and attempted to approach Har-V once more. The owner of the restaurant grabbed Fields and, with Trombetta's assistance, physically escorted Fields out of the restaurant.

Once outside, Fields attempted to punch and kick Trombetta, but Fields lost her balance and fell to the ground. While lying on the ground, Fields continued to try to kick and bite Trombetta. Trombetta, Busta, and the restaurant owner restricted Fields's movement; Trombetta straddled Fields; Busta grabbed Field's chin to stop her attempts to bite; and the restaurant owner pinned one of Fields's arms to the ground. Busta asked for bystanders to call law enforcement.

Officer Bowman and Officer Robideau were dispatched to the scene. The dispatch reported a fight in progress outside of the restaurant and multiple individuals were attempting to subdue a female suspect. The officers arrived approximately two minutes later and witnessed multiple people holding a woman to the ground. The officers perceived a fight in progress and that Fields was the aggressor as she was verbally belligerent, exhibiting combative behavior, and attempting to fight, including clawing and grabbing at the women's shirts. One of the women attempting to subdue Fields told the officers that Fields was actively trying to bite and claw at her. The officers introduced themselves, assumed physical control over Fields, and placed her in

---

[1] Although Busta's narrative report states she was speaking with Cindy Busta, her subsequent trial testimony named the individual as Cindy Trombetta. As additional trial testimony indicated that Cindy's last name is Trombetta, this Court will presume Trombetta is the appropriate name and will reference her accordingly.

[2] At trial, Busta testified that after watching video of the encounter, Fields did not appear to make contact with Har-V.

handcuffs. Fields did not resist the officers' attempt to place her in handcuffs, and the officers walked her away from the immediate scene.

The officers attempted to place Fields inside a patrol vehicle. When Fields resisted, the officers directed her towards the ground and ordered her to lie on her stomach. While on the ground, Officer Robideau testified that Fields scratched at his wrists and kicked him. After being struck in the groin by Fields's heel, Officer Robideau told Fields she was under arrest for battery on a law enforcement officer. Fields continued to kick at the officers and struck Officer Bowman as well, for which she received another charge of battery on a law enforcement officer.

The officers eventually placed Fields into a patrol vehicle and drove her to jail for booking and processing. Fields was uncooperative with the processing, and the officers placed her in a restraint chair. Later, the officers released Fields from the restraint chair and attempted to move her into the booking area. Because Fields continued to resist, the officers requested Officer Pagliaro's assistance. While assisting, Fields attempted to strike Officer Pagliaro in the head with her closed fist. Although, Officer Pagliaro ducked, Fields struck the left side of his head, for which Fields received her third charge of battery on a law enforcement officer.

Ultimately, the State charged Fields with three counts of battery on a law enforcement officer. Prior to trial, Fields requested a jury instruction regarding the validity of her initial detainment, arguing a reasonable jury could find it constituted an arrest without probable cause. Because battery on a law enforcement officer statutorily requires an officer to be "engaged in the performance of his duties," Fields argued the jury should be instructed that an officer executing an unlawful arrest is not engaged in the performance of his duties. The proposed jury instruction stated:

> Idaho law limits when a peace officer may make an arrest. A peace officer may make an arrest when upon immediate response to a report of a commission of a crime there is probable cause to believe that the person arrested has committed an assault or battery.
> A peace officer making an unlawful arrest is not engaged in the performance of his or her duties.

During a hearing held the morning of the second day of trial, the district court denied Fields's request, finding the evidence did not warrant the instruction because applicable precedent supported a wide-ranging definition of performance of duties, including actions pertaining to community caretaking. As the officers were acting for community safety when they detained Fields, the district court reasoned there was sufficient evidence that the officers were engaged in

3

the performance of their duties at the time of the alleged batteries. Further, the district court found the testimony presented to the jury stated that Fields was detained, not arrested, prior to the alleged batteries. Therefore, at that point in the trial proceedings, the district court found it would be improper for the court to direct the jury's focus to whether the detainment constituted an arrest and whether probable cause existed to support the purported arrest. The district court allowed Fields to renew her request for the instruction at the conclusion of evidence.

Fields did not formally renew her request prior to jury deliberations, noting that her previous request was on the record. The jury found Fields guilty on each charge of battery on a law enforcement officer. The district court imposed a determinate sentence of eighteen months for each of the convictions, with the sentences to run concurrently.[3] Fields timely appeals.

## II.

## STANDARD OF REVIEW

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

## III.

## ANALYSIS

On appeal, Fields alleges the district court erred in its denial of her proposed jury instruction. Fields argues her proposed instruction should have been given to the jury because it: (1) properly states the governing law; (2) is supported by a reasonable view of the evidence; (3) is not addressed adequately by other jury instructions; and (4) does not constitute an impermissible comment as to the evidence. Specifically, Fields argues the governing law supports her assertion that a law enforcement officer is not performing a duty when effectuating an unlawful arrest pursuant to this Court's holding in *State v. Wilkerson*, 114 Idaho 174, 775 P.2d 471 (Ct. App. 1988). Additionally, Fields argues a reasonable view of the evidence supports her legal theory that she was arrested when the officers placed her in handcuffs and this arrest was unlawful because

---

[3] The district court later reduced her sentence to twelve months determinate for each of the convictions, with the sentences to run concurrently.

4

the officers did not have a warrant, did not witness Fields commit a crime in their presence, and did not have probable cause to believe Fields had committed a felony. In response, the State contends the proposed jury instruction was neither legally nor factually appropriate and, alternatively, the claimed error is harmless.

A trial court presiding over a criminal case must instruct the jury on all matters of law necessary for the jury's information. I.C. § 19-2132. Therefore, a trial court must deliver instructions on the rules of law that are "material to the determination of the defendant's guilt or innocence." *State v. Mack*, 132 Idaho 480, 483, 974 P.2d 1109, 1112 (Ct. App. 1999). This necessarily includes instructions on the "nature and elements of the crime charged and the essential legal principles applicable to the evidence that has been admitted." *State v. Gain*, 140 Idaho 170, 172, 90 P.3d 920, 922 (Ct. App. 2004).

Although each party is entitled to request the delivery of specific instructions, *Severson*, 147 Idaho at 710, 215 P.3d at 430, such instructions will only be given if they are "correct and pertinent." I.C. § 19-2132. A proposed instruction is not "correct and pertinent" if it is: (1) an erroneous statement of the law; (2) adequately covered by other instructions; or (3) not supported by the facts of the case. *State v. Jeske*, 164 Idaho 862, 872, 436 P.3d 683, 693 (2019). Further, a trial court need not give a proposed instruction if the instruction constitutes an impermissible comment upon the evidence. *State v. Hoover*, 138 Idaho 414, 421, 64 P.3d 340, 347 (Ct. App. 2003).

## A. The District Court Did Not Err in Denying Fields's Proposed Jury Instruction Because It Was Not Supported by the Facts of the Case

The district court did not err in denying Fields's proposed jury instruction because a reasonable view of the evidence presented does not support that Fields was arrested when the officers initially handcuffed her upon arrival to the scene.

On appeal, Fields argues a reasonable view of the evidence supports her legal theory that she was arrested when the officers placed her in handcuffs because: (1) handcuffing can turn an investigatory detention into an arrest; (2) the officers did not utilize the least intrusive means reasonably necessary by immediately placing Fields in handcuffs, removing her from the immediate scene, and attempting to put her in a police vehicle; and (3) the officers admitted she was not free to leave. The State maintains Fields was not arrested until an officer verbally placed her under arrest for battery of a law enforcement officer after kicking Officer Robideau in the groin. Additionally, the State emphasizes the only information before the jury was that Fields was

5

not arrested until she struck Officer Robideau and the jury would not have been in a position to evaluate the distinction between a detention and an arrest because Fields did not request an instruction concerning when the officers exceed the scope of an investigative detention.

If the requested instruction is not supported by the facts of the case, the trial court need not give the instruction to the jury. *State v. Ward*, 135 Idaho 400, 402, 17 P.3d 901, 903 (Ct. App. 2001); *see also State v. Meyer*, 161 Idaho 631, 634-35, 389 P.3d 176, 179-80 (2017) (if requested instruction is not supported by evidence, court must reject requested instruction). Although a "defendant is entitled to an instruction where there is a reasonable view of the evidence presented in the case that would support the theory," *Ward*, 135 Idaho at 402, 17 P.3d at 903, a defendant is not entitled to an instruction dealing with a defense theory that is not supported by the evidence. *State v. Hall*, 161 Idaho 413, 423, 387 P.3d 81, 91 (2016). "Whether there was error in giving a proposed instruction is not based upon a claim made by the party who proposed it. Rather, the issue is whether there was evidence presented during the trial that would support the giving of the instruction." *Id.*

"[T]here is no bright line rule to determine when an investigatory detention has become an arrest." *State v. Buti*, 131 Idaho 793, 796, 964 P.2d 660, 663 (1998). Instead, courts must consider all the surrounding circumstances to determine whether the use of investigative methods, like utilizing handcuffs, were unreasonable. *State v. DuValt*, 131 Idaho 550, 554, 961 P.2d 641, 645 (1998).

Fields's argument that she was arrested when the officers arrived on the scene and placed her in handcuffs rests primarily upon the Idaho Supreme Court's decision in *State v. Pannell*, 127 Idaho 420, 901 P.2d 1321 (1995). In *Pannell*, officers stopped the defendant after receiving a dispatch report indicating he may have been involved in a recent domestic disturbance. *Id.* at 421, 901 P.2d at 1322. The officer explained to Pannell that he was investigating the disturbance. Pannell admitted his involvement and that he had been drinking. Pannell complied with the officer's request to administer field sobriety tests, which were inconclusive. The officer, wanting to finish the investigation and to stop Pannell from continuing to drive, told Pannell that he was going to drive Pannell back to the site of the domestic disturbance. The officer proceeded to pat Pannell down, place him in handcuffs, and position him in the patrol vehicle. *Id.*

On appeal, the Idaho Supreme Court evaluated whether handcuffing Pannell and placing him in the patrol car transformed the investigative detention into an arrest. *Id.* at 423, 901 P.2d at

6

1324. The Court noted that a bright line rule for determining whether an investigative detention is unreasonable had been rejected by the United States Supreme Court. Therefore the determination at issue demanded examination of all the surrounding circumstances. *Id.*

The Court indicated that although there was some evidence suggesting Pannell might have posed a threat to the officers' safety, the "evidence was not sufficient to meet the high threshold needed to justify the use of handcuffs as part of an investigative detention." *Id.* at 424, P.2d at 1325. Pannell was fully compliant with the officers at all times and had not been drinking enough to support a driving under the influence charge. *Id.* at 424-25, 901 P.2d at 1325-26. Further, the dispatch report contained no allegations of physical violence, the pat down search that preceded the handcuffing did not uncover any weapons, and there were three officers present at the scene to maintain order over a single suspect. *Id.* Under these circumstances, the Court held handcuffing Pannell and placing him in a patrol car amounted to an arrest because the officers employed a degree of force which exceeded that justified for an investigatory detention. *Id.* at 425, 901 P.2d at 1326.

In subsequent cases, Idaho's appellate courts have placed particular emphasis on the number of officers in relation to the number of suspects and the individual's level of compliance with the officer's requests when assessing the reasonableness of the use of handcuffs during an investigative detention. Although Idaho courts have determined the use of handcuffs in certain situations converted the investigative detention into an arrest, the courts have also held that other circumstances justified the decision to briefly, but significantly, restrain an individual's freedom of movement with handcuffs until the danger was reasonably dispelled. *Compare Buti*, 131 Idaho at 797-98, 964 P.2d at 664-65 (holding use of handcuffs and removal of individual at gunpoint converted stop into arrest because six officers were present, Buti complied with officers requests, and there was no indication that either suspect was armed) *with DuValt*, 131 Idaho at 554, 961 P.2d at 645 (use of handcuffs during investigative detention was reasonable because traffic stop occurred late at night, officers suspected involvement in drug activity, erratic driving pattern suggested driver was attempting to lose officers, officers were unaware of how many occupants were inside vehicle and what activities they were involved in, and DuValt was uncooperative with identification requests); *see also State v. Frank*, 133 Idaho 364, 368, 986 P.2d 1030, 1034 (Ct. App. 1999) (officer's decision to handcuff and place Frank in patrol vehicle was reasonable

7

because officer was alone and faced with potentially dangerous situation in unfamiliar and darkened area and Frank's conduct during initial encounter was noncompliant).

Here, the district court was not required to give Fields's proposed instruction to the jury because the instruction was not supported by the facts of the case. Two officers responded to a dispatch call of a fight in progress, alerting them that multiple people were attempting to subdue a female suspect. Upon arrival, the officers witnessed multiple people holding a woman to the ground. The officers perceived a fight in progress and Fields seemed to be the aggressor as she was verbally belligerent, exhibiting combative behavior, and attempting to fight, including clawing and grabbing at the shirts of the other individuals. One of the individuals told the officers that despite efforts to restrain Fields, Fields was trying to bite and claw her. Thus, when the two officers assumed physical control over Fields, they were inserting themselves in the middle of a combative situation where three individuals were previously unable to subdue a belligerent and aggressive Fields to stop her from aggressive, belligerent, combative behavior. Therefore, to ensure officer safety, it was reasonable for the officers to place Fields in handcuffs and remove her from the immediate area as part of an investigative detention. During the investigative detention, Fields continued to behave aggressively and after Fields kicked Officer Robideau, she was placed under arrest. Accordingly, no reasonable view of the evidence supported that the officers arrested Fields when they placed her in handcuffs. Rather, the officers handcuffed Fields as part of an investigative detention and she was only arrested after she struck an officer and was verbally placed under arrest. Thus, the district court did not err by declining to give Fields's proposed instruction to the jury.

**B.    The District Court Did Not Err in Denying Fields's Proposed Jury Instruction Because It Was an Incorrect Statement of Law**

Fields's proposed instruction sought to inform the jury that:  (1) a lawful arrest must be supported by probable cause; and (2) an officer is not in the "performance of his duties" under I.C. § 18-915(3)(b) when executing an unlawful arrest. Fields's legal theory is that the officers arrested her when they placed her in handcuffs immediately upon arrival to the scene and the arrest was unlawful because officers did not have probable cause that Fields had committed an assault or battery at that time. Therefore, Fields reasons her subsequent battery upon the officers could not give rise to a conviction of battery upon a law enforcement officer because the officers were not in the performance of their duties at that time; the allegedly unlawful arrest tainted all further actions by the officers. If a requested jury instruction is an erroneous statement of the law, the

8

trial court need not give the instruction to the jury. *Ward*, 135 Idaho at 402, 17 P.3d at 903. Fields's assumptions are incorrect thus, her argument fails.

> **1. Fields's proposed jury instruction is an incorrect statement of the law because it presupposes that she was arrested when the officers handcuffed her**

"While a detention cannot extend indefinitely, there is no bright line rule to determine when an investigatory detention has become an arrest. Instead, common sense and ordinary human experience must govern over rigid criteria." *Buti*, 131 Idaho at 796, 964 P.2d at 663 (internal quote and citation omitted). As such, courts must consider all of the surrounding circumstances and determine whether the investigative methods employed were the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Frank*, 133 Idaho at 368, 986 P.2d at 1034. However, a detention is not unreasonable simply because the protection of the public might, in the abstract, have been accomplished by less intrusive means. *Buti*, 131 Idaho at 797, 964 P.2d at 664. "The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *United States v. Sharpe*, 470 U.S. 675, 686-87 (1985).

Although officers are entitled to use handcuffs and place individuals in a patrol car during limited investigatory stops to maintain their safety, these actions must be reasonable based upon the specific facts of the situation and the reasonable inferences drawn from those facts. *DuValt*, 131 Idaho at 554, 961 P.2d at 645. Otherwise, the detention is transformed into an arrest. *Id.* In determining if a particular detention is reasonable, the court should consider: (1) the duration of the invasion imposed by the additional restriction; and (2) the law enforcement purposes served. *Id.* Additional factors are the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds. *State v. Ferreira*, 133 Idaho 474, 480, 988 P.2d 700, 706 (Ct. App. 1999).

Fields's proposed instruction presupposes that the facts support the notion that she was arrested not detained. However, the district court properly determined, as set forth above, that the officers detained, not arrested, Fields. Fields essentially argues for an instruction to the jury that would place the determination of the legal question of whether Fields was detained or arrested in the hands of the jury. The district court properly refused to do so. Even so, Fields's proposed jury instruction does not instruct the jury on the legal considerations necessary to make a decision on whether Fields was detained or arrested. For instance, the proposed jury instruction does not speak

9

to the argument Fields makes on appeal about the officers employing the least intrusive means possible so as not to turn an investigative detention into an arrest. Simply put, the considerations necessary for the determination are not included in the proposed jury instruction. The district court correctly refused to instruct the jury on the issue, and the proposed jury instruction is an incorrect statement of the law.

**2. Fields's proposed jury instruction is an incorrect statement of the law because it presupposes that the officers were not engaged in the performance of their official duties**

Additionally, Fields's proposed jury instruction is an incorrect statement of law because it presupposed the officers were not engaged in the performance of their official duties when Fields committed the batteries. For an individual to be found guilty under I.C. § 18-915(3)(b), the State must prove the officer was performing an official duty at the time of the battery. *State v. Kelly*, 158 Idaho 862, 865, 353 P.3d 1096, 1099 (Ct. App. 2015). However, performing an official duty includes a range of officer conduct. For example, an officer is performing an official duty if engaged in the community caretaking function when the battery occurs because "[w]ithout question, an officer's duties include responding to calls for assistance and helping citizens." *Id.* at 866, 353 P.3d at 1100.

Fields agrees the officers were performing an official duty when they responded to the dispatch and were investigating the situation at the scene. However, Fields's proposed jury instruction conveys that officers can only be engaged in one official duty at a time such that the officers stopped performing their official duties upon handcuffing her and could not have been performing any other official duty during or after that time. The jury instruction did not address whether officers could be simultaneously engaged in official duties and therefore, because Fields's proposed jury instruction is more constrictive than the law requires, it is an incorrect statement of law.

**3. Fields's proposed jury instruction is an incorrect statement of the law because it uses a narrow definition of "duty" that has not been adopted by Idaho courts**

Finally, Fields's proposed jury instruction is an incorrect statement of law because it narrowly defines "duty" under I.C. § 18-915(3)(b). Idaho appellate courts have not established such a narrow definition when analyzing whether law enforcement officers are engaged in the performance of a "duty" when effectuating an unlawful arrest in the context of felony and misdemeanor statutes concerning resisting and obstructing officers.

10

In *Wilkerson*, this Court addressed whether the word "duty" under the misdemeanor resisting statute, I.C. § 18-705, prohibited individuals from resisting unlawful acts of law enforcement officers; in other words, this Court addressed how broadly to construe an officer's "duty" under a statute that criminalized resisting or obstructing an officer in discharge, or attempted discharge, of his duties of office. *Wilkerson*, 114 Idaho at 178, 755 P.2d at 475. This Court acknowledged the Idaho Supreme Court held Idaho's former felony resisting statute, which criminalized an individual from using force or violence to knowingly resist an officer in the performance of his duty, encompassed resistance to an unlawful arrest. *Id.* at 177 n.1, 755 P.2d at 474 n.1. However, this Court read the word "duty" under the misdemeanor resisting statute more narrowly, holding the Idaho Legislature did not intend to criminalize passive disobedience to any actions of a law enforcement officer because "[p]assive resistance does not present the same immediate risk of violence and physical harm as does forcible resistance." *Id.* at 180, 755 P.2d at 477. Therefore, "duty" under the misdemeanor resisting statute encompasses only those lawful and authorized acts of a public officer. *Id.*

However, Fields's proposed jury instruction incorrectly conveys that Idaho courts have held the word "duty" as interpreted in I.C. § 18-915(3)(b), a different statute, is similarly defined narrowly and applies to discrete acts of the officers instead of a more broad definition that would include acts like investigation of a dispatch referral. Idaho courts have not held that this constrained definition applies to the word "duty" under I.C. § 18-915(3)(b) and thus, the proposed jury instruction is an incorrect statement of law.

Because Fields's proposed jury instruction presupposes she was arrested when the officers placed her in handcuffs, conveys the officers could not have been engaged in any other official duty, and uses a narrow definition of the word "duty" that has not been adopted by the courts, it constituted an incorrect statement of law. Accordingly, the district court did not err by declining to give Fields's proposed instruction to the jury.

**IV.**

**CONCLUSION**

Fields's proposed jury instruction was not supported by the facts of the case and was an incorrect statement of law. Accordingly, the district court did not err by declining to give her proposed instruction to the jury and the judgment of conviction is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.

11