**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 52035**

| | | |
|---|---|---|
| **STATE OF IDAHO** | ) | |
| | ) | |
| **Plaintiff-Respondent** | ) | **Boise, April 2025 Term** |
| | ) | |
| v. | ) | **Opinion filed: August 27, 2025** |
| | ) | |
| **STERLING NICHOLAS MCGUIRE** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Dane H. Watkins, Jr., District Judge.

Judgment of conviction is <u>affirmed in part</u> and <u>vacated in part</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Andrea Reynolds argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Amy Lavin argued.

_____

BEVAN, Chief Justice.

Sterling McGuire appeals his judgment of conviction for battery on a law enforcement officer and resisting or obstructing an officer. During his jury trial, McGuire moved for a mistrial based on statements made by the prosecutor during closing argument. The district court denied the motion for mistrial and the jury found McGuire guilty of both counts. McGuire appeals his conviction arguing there was insufficient evidence for a jury to find him guilty on either count and the denial of his mistrial motion constituted reversible error. As set forth below, we affirm in part and vacate in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2021, Idaho Falls Police Officers Daniel Godfrey and Timothy Weaver responded to a call for service regarding Sterling McGuire at KJ's, a convenience store. McGuire was near some semi-trucks located behind the store. Godfrey noticed that McGuire was sweating and appeared aggressive, giving him the impression that McGuire was under the influence.

1

McGuire told Godfrey that he was homeless. McGuire was then taken to a local hospital for medical clearance. Once McGuire was medically cleared, officers took him to the Behavioral Health Crisis Center of East Idaho.

The Crisis Center is a community resource located in Idaho Falls for those in the surrounding communities who need a place to stay for the night, including homeless individuals. It is a local "place for adults to go if they are experiencing a behavioral health crisis, such as suicidal thoughts or withdrawal from drugs, to get help. They can stay for up to 24 hours and receive a bed, food, and services from mental health professionals so they can decide what to do next." *Statewide Crisis Centers*, IDAHO DEP'T OF HEALTH & WELFARE, https://healthandwelfare.idaho.gov/services-programs/behavioral-health/statewide-crisis-centers (last visited May 19, 2025). Godfrey testified that it was cold that evening, and he thought the Crisis Center was the best option for McGuire. Admission to the Crisis Center is voluntary; a person can leave anytime they want. When officers take someone to the Crisis Center, they fill out one page of information and leave. Weaver completed the law enforcement portion of McGuire's intake forms. Godfrey and Weaver left after dropping McGuire off.

A short time later, Officers Godfrey and Weaver were dispatched back to the Crisis Center at the Crisis Center's request. The officers learned that McGuire had not completed the intake process. They told him he needed to finish the intake paperwork or leave the premises. Godfrey explained to McGuire that he had two options: (1) complete the intake process and enter the facility, or (2) leave. When McGuire did not respond, Godfrey instructed him to leave the Crisis Center. When McGuire did not move, Godfrey realized he would have to physically escort McGuire out of the building, so he turned on his body camera. Weaver testified that he and Godfrey tried to stand McGuire up and escort him off the premises to enforce a "trespass code."

Godfrey stood up and reached out his hand to McGuire to escort him from the building. McGuire recoiled, raised his legs, and brought his hands up to his chest, forming fists. Godfrey testified at trial that he was afraid McGuire would kick him or Weaver. Godfrey and Weaver then tried to pick McGuire up, but McGuire was non-compliant and was taken to the floor. Weaver struck McGuire with his knee three times to subdue him. In the incident, Godfrey suffered a sprained wrist, and Weaver suffered a bloody nose, injured knee, and back. According to Weaver, McGuire struck him in the face, and it could not have been either Godfrey or the floor that caused his other injuries. In the course of the skirmish, Weaver's body camera was damaged. McGuire

was then removed from the building and taken to jail. The footage from the officers' body cameras was admitted into evidence and played for the jury.

McGuire was charged with felony battery on a law enforcement officer, in violation of Idaho Code section 18-915(3)(b), and misdemeanor resisting or obstructing an officer, in violation of Idaho Code section 18-705. The case proceeded to a jury trial. The evidence at trial consisted of the testimony of Godfrey and Weaver, largely recounted above, and the footage from both of their body cameras. McGuire did not testify.

McGuire's closing argument was that the State had not presented enough evidence to support a conviction. The following dialogue occurred during the State's rebuttal argument:

| | |
|---|---|
| [State]: | This part always becomes a bit of a hodgepodge. I want to walk through a few things. Instruction Number 17: The defendant has the right to choose not to testify. There is no [sic] the defendant has the right to choose not to present any evidence. |
| [Defense]: | Objection, Your Honor. He's going to shift the burden. |
| [State]: | I'm not shifting the burden. I just want to point out what the instructions say. This is argument, and I'm allowed to make it. |
| [Defense]: | He's wrong. A defendant has no obligation to present evidence. |
| [The court]: | That is correct. |
| [Defense]: | I mean, that's borderlining [sic] on a mistrial, Judge. |
| [State]: | Your Honor, I'm not saying the defendant has the burden to present any evidence. [Defense] has said the defendant – I'm about to explain the defendant does have the subpoena power and that he can go out and get his own evidence, and it doesn't implicate his right to testify or not to testify. |
| [The court]: | I wouldn't have you go down that path. |

The prosecutor then moved to another area of argument. After the jury was sent for deliberation, McGuire moved for a mistrial:

[T]he attempt by the State to argue that Mr. McGuire could have gathered evidence, could have presented evidence, goes to the heart of one of the most important rights we have, which is the right to remain silent, the right to make the State carry the burden, and I think it's black letter law. It's basic Constitutional law that Mr. McGuire has a right to not even say anything during the entire pendency of this matter.

During deliberations, the jury asked the district court three questions: (1) Did the officers have the duty to remove McGuire from the facility?; (2) Was it lawful to ask [McGuire to] to leave the facility?; and (3) Were the officers permitted to remove McGuire from the facility? The court

3

responded: "The [c]ourt has provided you with the instructions necessary to render a verdict. I would direct you back to those instructions in response to your three questions." After responding to the jury's questions, the district court consulted the reporter's record and re-read statements made by the State.

> So this is [the State's] statement, "There is no the defendant has the right to choose not to present any evidence." So when the appellate court reads that sentence, they may interpret it one way or another. It's confusing to me. It's confusing as I've listened to it a number of times, and I'm not sure the statement has a lot of meaning to it. I'll just make that finding.

> And, again, then [Defense] then quickly states, and I quote, "Objection, Your Honor. He's going to shift the burden." [The State] then states, and I quote, "I'm not shifting the burden. I just want to point out the instruction. This is argument, and I'm allowed to make it."

> Again, at this point the Court has no real issue. I want to point out for the record, also, that when [Defense] makes his objection, [the State] turns his back to the jury and begins to address directly the Court, obviously to speak to the Court. The Court recognizes that it was likely overheard by the jury, but he turned to visit with the Court. [Defense] then said, "He's wrong. A defendant has no obligation to present evidence." Then the Court, in response to that, very quickly says, "That is correct." So in my mind I'm endorsing [Defense's] objection and endorsing his statement that the defendant has no obligation to present evidence.

> [Defense] then says, "I mean, that's bordering on a mistrial, Judge." [The State] again, continuing to speak to the Court says, "Your Honor, I'm not saying the defendant has a burden to present any evidence. [Defense] has said the defendant – I'm about to explain the defendant does have the subpoena power that he can go out and get his own evidence, and it doesn't implicate his right to testify or not testify."

> This is the area in which the State is approaching some questionable statements. Call it argument. Call it in response to an objection. It's in the presence of the jury. I understand all of that. The Court then, I think rather quickly again, makes its statement, which I consider my ruling, "I wouldn't have you go down that path." And that's the last statement on the issue, and [the State] then begins to argue a different point.

Both sides then argued their positions and the district court made the following ruling:

> [I]t was -- it was an area which I think, as Counsel described, is, in fact, a fine line. I think the Court's response simply to say, ["]I won't have you go down that path,["] was an appropriate response. But I think that the implication from the jury, as quickly as it happened and with the Court's statements endorsing the correct principles of law over the course of this dialogue, both on behalf of [Defense] and on behalf of the State, was -- was an appropriate response and cured anything that would have been close enough to the line that would result in a mistrial, so the Court is going to deny the defense's motion for a mistrial.

4

The jury returned a verdict of guilty of both counts. McGuire was sentenced to one year fixed for the felony battery on an officer charge. He received only a fine for the misdemeanor resisting and obstructing charge. McGuire appealed his convictions on both counts. The Court of Appeals affirmed McGuire's convictions, and we granted his petition for review.

## II. ISSUES ON APPEAL

1.      Whether sufficient evidence supports McGuire's convictions.

2.      Whether the district court erred in denying McGuire's motion for mistrial based on the State's closing argument.

## III. STANDARD OF REVIEW

When a case is presented to us on a petition for review from the Court of Appeals, this Court's standard is well established. We give "due consideration" to the Court of Appeals' decision but directly review the decision of the trial court. *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019).

"Appellate review of the sufficiency of the evidence is limited in scope." *State v. Gomez-Alas*, 167 Idaho 857, 861, 477 P.3d 911, 915 (2020) (quoting *State v. Betancourt*, 151 Idaho 635, 638, 262 P.3d 278, 281 (Ct. App. 2011)). "This Court will uphold a judgment of conviction entered upon a jury verdict so long as there is substantial evidence upon which a rational trier of fact could conclude that the prosecution proved all essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *State v. Tryon*, 164 Idaho 254, 257, 429 P.3d 142, 145 (2018)). "In conducting its analysis, the [C]ourt is required to consider the evidence in the light most favorable to the State, [and] will not substitute its judgment for that of the jury on issues of witness credibility, weight of the evidence, or reasonable inferences to be drawn from the evidence." *Id.* (alterations in original) (quoting *State v. Taylor*, 157 Idaho 186, 190, 335 P.3d 31, 35 (2014)).

When reviewing a district court's denial of a motion for mistrial, the question is "whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record." *State v. Johnson*, 163 Idaho 412, 421, 414 P.3d 234, 243 (2018) (quoting *State v. Sandoval-Tena*, 138 Idaho 908, 912, 71 P.3d 1055, 1059 (2003)). "The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error." *Id.* "Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020) (quotation marks and citation omitted).

**IV. ANALYSIS**

**A.** **The evidence in the record is sufficient to support McGuire's conviction for battery on a law enforcement officer, but it is not sufficient to support his conviction for resisting or obstructing a law enforcement officer.**

McGuire argues the evidence was insufficient to support his conviction for battery on a law enforcement officer because the State did not present evidence that Officers Godfrey and Weaver were performing a duty or attempting to perform a duty when McGuire battered them. McGuire first argues the State presented no evidence to show that Weaver was legally obligated to remove McGuire from the Crisis Center. Next, McGuire argues the State failed to present evidence of the Crisis Center's intake policies. He argues that lacking evidence that McGuire was trespassing, or that the Crisis Center asked police to remove McGuire, the State failed to present a prima facie case.

A battery is defined as any:

(a) Willful and unlawful use of force or violence upon the person of another; or

(b) Actual, intentional and unlawful touching or striking of another person against the will of the other; or

(c) Unlawfully and intentionally causing bodily harm to an individual.

I.C. § 18-903. A person commits battery on a law enforcement officer if he:

[C]ommit[s] a violation of the provisions of section 18-903, Idaho Code, except unlawful touching as described in section 18-903(b), Idaho Code, against the person of a former or present peace officer, sheriff or police officer:
. . .

(b) While the victim is engaged in the performance of his duties and the person committing the offense knows or reasonably should know that such victim is a peace officer, sheriff or police officer[.]

I.C. § 18-915(3)(b).

A person is guilty of misdemeanor resisting or obstructing a law enforcement officer if he "wil[l]fully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office . . . . " I.C. § 18-705.

McGuire concedes that the officers were engaged in the performance of a duty when they responded to the Crisis Center, but he asserts that the officers were not performing a duty "when they forcibly removed [him] from the Crisis Center." Thus, our focus on this appeal is whether Godfrey and Weaver were "engaged in the performance of [their] duties," or "discharging or attempting to discharge" their duties when they removed McGuire from the Crisis Center.

6

In *State v. Kelly*, the Court of Appeals considered the meaning of "duty" as defined under Idaho Code section 18-915(3)(b). 158 Idaho 862, 353 P.3d 1096 (Ct. App. 2015). There, Kelly was handcuffed and sitting on a sidewalk outside of a bar. *Id.* at 864, 353 P.3d at 1098. An officer questioned Kelly and determined he was too drunk to drive home. *Id.* Kelly was also too drunk to walk, so the officer helped Kelly to a friend's car. *Id.* Kelly struck the officer in the face and was charged with battery on a law enforcement officer. *Id.* At trial, Kelly argued the State failed to prove what specific duty the officer was engaged in when Kelly struck him. *Id.* The Court of Appeals concluded that section 18-915(3)(b) "does not require that the officer be engaged in any specific duty—only that he be engaged in the performance of his duties." *Id.* at 865, 353 P.3d at 1099. Applying this interpretation, the court held that "[w]ithout question, an officer's duties include responding to calls for assistance and helping citizens." *Id.* at 866, 353 P.3d at 1100.

In *State v. Fields*, the Court of Appeals reviewed another case arising under Idaho Code section 18-915(b)(3) and rejected a narrow definition of "duty" under the statute. 168 Idaho 57, 479 P.3d 450 (Ct. App. 2020). Fields struck and kicked officers while she was being arrested. *Id.* at 65, 479 P.3d at 458. Fields wanted to instruct the jury that "an officer is not in the 'performance of his duties' under [Idaho Code section] 18-915(3)(b) when executing an unlawful arrest." *Id.* But the court dismissed Fields' argument because "duty" under section 18-915(3)(b) has not been construed as narrowly as "duty" under section 18-705, which defines the misdemeanor of resisting or obstructing a law enforcement officer. *Id.* at 66–67, 479 P.3d at 459–60.

More than thirty years earlier, the Court of Appeals interpreted "duty" as used in Idaho Code section 18-705, the resisting statute. *State v. Wilkerson*, 114 Idaho 174, 755 P.2d 471 (Ct. App. 1988), *aff'd*, 115 Idaho 357, 766 P.2d 1238 (1988). In *Wilkerson*, the defendant's son had been involved in a truck accident, and when Wilkerson arrived at the scene, she encountered a law enforcement officer who had called for a tow truck. *Id.* at 175, 755 P.2d at 472. When the tow truck arrived, Wilkerson placed herself between the tow truck and her vehicle and demanded a different towing company remove the damaged vehicle. *Id.* Wilkerson refused to move out of the way and continued blocking the tow truck. *Id.* An officer forcibly removed her and placed her under arrest for violating Idaho Code section 18-705. *Id.* Like McGuire, Wilkerson argued that the officer was not performing a duty when he intervened. *Id.* The Court of Appeals noted there were issues of fact that needed to be resolved, so it remanded the case for a new trial. *Id.* at 180, 755 P.2d at 477. The court held that "duty" as used in section 18-705 "encompass[es] only those lawful

and authorized acts of a public officer. To hold otherwise would clothe an officer with protection from resistance based only on his status as an officer . . . ." *Id.* We later reinforced *Wilkerson* and held that "[t]he term 'duty' in section 18-705 includes only 'those lawful and authorized acts of a public officer.'" *State v. Bishop*, 146 Idaho 804, 817, 203 P.3d 1203, 1216 (2009) (quoting *Wilkerson*, 114 Idaho at 180, 755 P.2d at 477). Unlawful acts, such as illegal arrests or searches, are not duties as defined by section 18-705. *See id.*

History demonstrates why "duty" has two different interpretations under each of these statutes. At common law, a person could use reasonable force to resist an unlawful arrest. *See Wilkerson*, 114 Idaho at 177, 755 P.2d at 474. That said, this Court recognized that use of force escalates a situation. *See State v. Richardson*, 95 Idaho 446, 450–51, 511 P.2d 263, 267–68 (1973) ("Because officers will normally overcome resistance with necessary force, the danger of escalating violence between the officer and the arrestee is great. What begins as an illegal misdemeanor arrest may [culminate] in serious bodily harm or death."). The *Richardson* Court, under a now-repealed statute, held that a person "may not use force to resist an arrest by one he knows or has good reason to believe is an authorized peace officer in the performance of his duties." *Id.* at 451, 511 P.2d at 268. Because "duties" under the resisting statute do not include unlawful acts, "an individual may *peacefully* obstruct or refuse to obey an officer's unlawful act without violating [Idaho Code section 18-705]." *Bishop*, 146 Idaho at 817, 203 P.3d at 1216 (emphasis added).

Thus, to prove an individual resisted or obstructed a law enforcement officer under section 18-705, the State must prove that a defendant "wil[l]fully resist[ed], delay[ed] or obstruct[ed] any public officer, in the discharge, or attempt to discharge, of *any duty of his office* . . . ." I.C. § 18-705 (emphasis added). An element of the offense is that the officer be discharging a duty of his office when a person resists. *Id.* Because "duty" under this statute includes only lawful acts, the predicate to any conviction for resisting or obstructing an officer requires the State to prove that the officers' actions were lawful. *See State v. Draper*, 151 Idaho 576, 588, 261 P.3d 853, 865 (2011) (explaining that the State must prove all elements of a charge).

The same is not true for felony battery on a law enforcement officer or other personnel. I.C. § 18-915(3)(b). McGuire argues that the State should have presented evidence of the Crisis Center's intake policies or offered testimony from one of the Center's employees about the reason the officers were asked to return to the Crisis Center. According to McGuire, it is unknown whether

the officers were legally obligated to remove McGuire from the premises. Thus, the State failed to establish the officers were performing a "duty" when forcibly removing McGuire from the Crisis Center. The State counters that these facts are of no moment because an officer performing the "duties of his or her office" need not be performing specific duties under *Kelly*. The State also argues that McGuire's proposed interpretation would lead to an absurd result. For example, a defendant who punched an officer when that officer approached him to ask questions would not violate the statute because the officer was not "legally obligated or bound" to approach that person. Similarly, a defendant who battered an officer patrolling a particular street would avoid conviction just because the officer had discretion of where to patrol.

We agree that these examples show that McGuire's interpretation is not a reasonable one. Whether the officers were "legally obligated or bound" to remove McGuire from the clinic is not an element of the felony crime. An officer need not be performing a legal obligation to be "performing his duties" under section 18-915(3)(b). In *Kelly*, the officer was not under a legal obligation to help Kelly to a friend's car. Yet the conviction of battery on a law enforcement officer was upheld. We are unaware of any analogous common law right to batter law enforcement officers, even when their actions are allegedly unlawful. *See Richardson*, 95 Idaho at 451, 511 P.2d at 268 ("[I]f a person has reasonable ground to believe he is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest."). At bottom, "duty" under section 18-915(3)(b) is broad. It "does not require that the officer be engaged in any specific obligation of his or her office—only that the officer be engaged in the "performance of his duties." *Kelly*, 158 Idaho at 865, 353 P.3d at 1099. And "performance of duties" includes responding to calls and assisting citizens. *Id.* at 866, 353 P.3d at 1100.

The result is different for the misdemeanor of resisting or obstructing an officer. Under section 18-705, we have defined the statutory language, "duty of his office" more narrowly as "those lawful and authorized acts of a public officer" because an individual may peacefully resist an unlawful act of a police officer. *Bishop*, 146 Idaho at 817, 203 P.3d at 1216. Thus, we apply two different standards when analyzing whether the State established the elements of each crime at trial.

Officers Weaver and Godfrey were performing their duties under section 18-915(3)(b) when they returned to the Crisis Center and removed McGuire from the premises. Responding to

9

calls for service and assisting citizens are two of the many duties of police officers. *Kelly*, 158 Idaho at 866, 353 P.3d at 1100. Here, the officers were responding to a call for service. The officers were assisting both the Crisis Center *and* McGuire. The officers were in uniform, so McGuire knew they were law enforcement officers. McGuire had no right to batter the officers even if their actions were unlawful. Accordingly, we affirm McGuire's conviction for battery on a law enforcement officer under section 18-915(3)(b).

The same is not true for McGuire's misdemeanor conviction. We vacate McGuire's judgment of conviction under section 18-705 because the State failed to prove that Officer Godfrey's and Weaver's actions were "lawful and authorized." Weaver testified that he was enforcing a "trespass code." This is insufficient to establish that the officers' actions that evening constituted a duty under section 18-705. A person is guilty of criminal trespass when he "enters or remains on the real property of another without permission, knowing or with reason to know that his presence is not permitted." Idaho Code § 18-7008(2)(a). "A person has reason to know his presence is not permitted when, except under a landlord-tenant relationship, he fails to depart immediately from the real property of another *after being notified by the owner or his agent to do so . . . .*" *Id.* (emphasis added).

The evidence presented at trial does not establish that McGuire was committing criminal trespass. Godfrey could not testify about *why* the officers were dispatched to the Crisis Center because his answer called for hearsay. Likewise, Weaver spoke with the intake clerk when they arrived at the Crisis Center, but the district court sustained a hearsay objection to the substance of their conversation. Finally, the State did not introduce evidence of the Crisis Center's policies. The only evidence showing that removing McGuire was *lawful and authorized* is Weaver's testimony that he was enforcing a "trespass code." This testimony lacks any indication that McGuire was notified by the owner or an agent of the Crisis Center that his presence was not permitted. *See State v. Bundy*, ___ Idaho ___, ___, 566 P.3d 445, 458 (2025) (explaining that defendant was trespassing after being asked to leave by a state agent). Without more, a rational factfinder could not conclude that Officers Weaver and Godfrey were authorized to remove McGuire from the Crisis Center. Accordingly, we vacate McGuire's conviction for resisting or obstructing an officer because the State failed to prove all elements of the crime charged.

**B.      Although the prosecutor's comments constituted misconduct, the district court cured any error resulting from the misconduct and thus did not commit reversible error when it denied McGuire's motion for mistrial.**

McGuire next argues the State improperly shifted the burden of proof to the defendant during closing argument; therefore, the denial of his mistrial motion constitutes reversible error. McGuire further argues that a new trial is required because "the State cannot prove beyond a reasonable doubt that the district court's error in denying his motion for a mistrial was harmless." While we agree with McGuire that the State improperly shifted the burden of proof, which amounts to prosecutorial misconduct, the district court's quick action cured any error resulting from that misconduct.

McGuire's motion for mistrial was based on the following exchange:

[State]: This part always becomes a bit of a hodgepodge. I want to walk through a few things. Instruction Number 17: The defendant has the right to choose not to testify. There is no the defendant has the right to choose not to present any evidence. [sic]

[Defense]: Objection, Your Honor. He's going to shift the burden.

[State]: I'm not shifting the burden. I just want to point out what the instructions say. This is argument, and I'm allowed to make it.

[Defense]: He's wrong. A defendant has no obligation to present evidence.

[The court]: That is correct.

[Defense]: I mean, that's borderlining [sic] on a mistrial, Judge.

[State]: Your Honor, I'm not saying the defendant has the burden to present any evidence. [Defense] has said the defendant – I'm about to explain the defendant does have the subpoena power and that he can go out and get his own evidence, and it doesn't implicate his right to testify or not to testify.

[The court]: I wouldn't have you go down that path.

"A defendant's right to a fair trial is impacted '[w]here a prosecutor attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence.'" *State v. Parker*, 157 Idaho 132, 145, 334 P.3d 806, 819 (2014) (quoting *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010)). Further, a "prosecutor commits misconduct when he diminishes or distorts the State's burden to prove the defendant's guilt beyond a reasonable doubt." *Stanfield v. State*, 165 Idaho 889, 899, 454 P.3d 531, 541 (2019). "'[C]omments intended to highlight the weaknesses of a defendant's case do not shift the burden of proof to the defendant where the prosecutor does not argue that a failure to explain them adequately requires a guilty

11

verdict and reiterates that the burden of proof is on the government.'" *Id.* (quoting *State v. Adamcik*, 152 Idaho 445, 482, 272 P.3d 417, 454 (2012)).

McGuire argues this case is like *Stanfield*. In *Stanfield*, the State argued during closing argument: "This defendant wants you to accept a number of things as mere coincidences. *In order for her to be not guilty of this crime*, she wants you to accept that the following are coincidences." *Id.* at 898, 454 P.3d at 540 (emphasis in original). Stanfield argued this improperly shifted the burden of proof to the defendant. *Id.* We agreed and said that misconduct occurs "where a prosecutor argues that a failure to explain a weakness requires a guilty verdict. "The statement, '[i]n order for her to be not guilty of this crime' implies that she somehow lost the presumption of innocence." *Id.* at 899, 454 P.3d at 541 (internal citation omitted).

McGuire's argument is well taken. We agree that *Stanfield* controls, and under *Stanfield*, we conclude that the comments from the prosecutor rose to the level of prosecutorial misconduct. McGuire's counsel asserted during his closing argument that the State failed to prove its case beyond a reasonable doubt because it failed to present evidence: (1) that the responding officers were familiar with the policies and procedures of the Crisis Center, and (2) identifying the duty that the officers were performing when they responded to the Crisis Center. At the beginning of the prosecutor's rebuttal argument, he referred to Jury Instruction No. 17 and stated: "The defendant has the right to choose not to testify. There is no [sic] the defendant has the right to choose not to present any evidence."

The only reasonable interpretation of the latter statement is that the defendant had an obligation to present evidence to support his position. That assertion is false. The prosecutor's comments suggesting otherwise diminished or distorted the State's burden and constituted prosecutorial misconduct under *Stanfield*.

In response to an objection from McGuire, the State said, "I'm not shifting the burden. I just want to point out what the instructions say. This is argument, and I'm allowed to make it." The district court noted that the prosecutor said this with

> his back to the jury and begins to address directly the [c]ourt, obviously to speak to the [c]ourt. The [c]ourt recognizes that it was likely overheard by the jury, but he turned to visit with the [c]ourt. [Defense counsel] then said, "He's wrong. A defendant has no obligation to present evidence." Then the [c]ourt, in response to that, very quickly says, "That is correct." So in my mind I'm endorsing [Defense's] objection and endorsing his statement that the defendant has no obligation to present evidence.

At this point, the State began to respond to the alleged prosecutorial misconduct allegation by stating:

> Your Honor, I'm not saying the defendant has the burden to present any evidence. [Defense] has said the defendant – I'm about to explain the defendant does have the subpoena power and that he can go out and get his own evidence, and it doesn't implicate his right to testify or not to testify.

The district court immediately noted: "I wouldn't have you go down that path."

We note first that the transcript appears to indicate that the prosecutor made the offending comment while *facing* the jury because the district court indicates that the prosecutor turned to face the court *after* McGuire's counsel objected to the statement. That said, regardless of whether the prosecutor made the offending comment with his back to the jury, *Stanfield* contains no safe harbor for prosecutorial misconduct committed while one's back is to the jury. The comments made by the prosecutor in *Stanfield* carry similar force to the statement made here. The prosecutor asserted that the jury instruction only indicated that McGuire could choose not to testify, it did not indicate that he could choose not to present evidence. By doing so the prosecutor shifted the burden to the defendant. Therefore, we hold that prosecutor's statements constituted prosecutorial misconduct.

That said, the district court's quick action in cutting off the prosecutor's line of argument, combined with its jury instructions, cured any error resulting from the misconduct. "[I]nappropriate prosecutorial statements may be cured by appropriate instructions by the trial court." *State v. Abdullah*, 158 Idaho 386, 443, 348 P.3d 1, 58 (2015) (alteration in original) (quoting *State v. Dunlap*, 155 Idaho 345, 369, 313 P3d 1, 25 (2013)).

The colloquy noted above establish the district court's proper response under these circumstances. The court's statements indicated to the jury that the prosecutor's statement was wrong, and that McGuire did not have an obligation to present evidence to defend against the charges. Moreover, McGuire's counsel later conceded while arguing his motion for mistrial that the jury instructions adequately conveyed that "the defendant has no obligation to present any evidence whatsoever."

Thus, although we conclude that the prosecutor's statement constituted prosecutorial misconduct, we ultimately hold that the district court's quick actions and jury instructions cured any error resulting from the misconduct.

13

## V. Conclusion

We affirm McGuire's conviction for battery on a law enforcement officer and the denial of his mistrial motion. We vacate McGuire's judgment of conviction for resisting a law enforcement officer.

JUSTICES BRODY, MOELLER, ZAHN, and MEYER CONCUR.